## PEOPLE'S UNITED STATES BANK, Appellant, v. RUSSELL P. GOODWIN et al., Respondents.

St. Louis Court of Appeals. Argued and Submitted January 9, 1912. Opinion Filed March 5, 1912. Motion for Rehearing Overruled October 15, 1912.

1. **APPELLATE PRACTICE: Rules of Decision: Reasons Assigned by Trial Court: Conclusiveness.** The appellate court is not bound by erroneous reasons assigned by the trial court, if, on consideration of the whole case, it be of the opinion that the conclusion arrived at or the judgment rendered is a correct one.

2. **LIBEL AND SLANDER: Foundation of Action.** The foundation of an action for defamation, whether libel or slander, is the injury done to reputation.

3. ————: **Action by Corporation: Injury to Business: Going Concern.** In an action by a corporation for a libel, alleged to have injuriously affected its business, it is essential to a recovery that the corporation prove that, at the time of the publication, it was engaged in the particular business alleged to have been affected.

4. ————: **Foundation of Action.** Defamatory words, to be actionable, must prejudice the one concerning whom they are published, in the special profession or business in which he is actually engaged, and it is not sufficient that the words merely

be injurious to one, whatever his pursuit. As to the latter, it is immaterial whether or not he is in business, but as to the former, if the publication is as to his trade, it must appear that he was in that trade when the publication was made.

5. **EVIDENCE: Presumptions: Continuation of Status Quo.** A state of facts once shown to exist is presumed to continue until the contrary is shown.

6. ———: **Corporations: Proof of Doing Business.** In an action by a corporation for libel, the mere fact that a certificate of incorporation and authority to carry on business was issued, was no proof that the corporation ever engaged in business or was so engaged at a later time when the alleged libelous publication was made.

7. **LIBEL AND SLANDER: Action by Corporation: Injury to Business: Sufficiency of Evidence.** In an action by a corporation for alleged libel directed to the management of its business, evidence *held* to be insufficient to establish that the corporation was carrying on business at the time the alleged libelous publication was made, and hence it is *held* that the trial court properly directed a verdict for defendant.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams,* Judge.

AFFIRMED.

*Carter, Collins, Jones & Barker* and *Barclay, Fauntleroy & Cullen* for appellant.

*Chester H. Krum* and *Charles A. Houts* for respondents.

REYNOLDS, P. J.—This is an action by plaintiff, appellant here, against defendants for libel. The case was here before on appeal by plaintiff from a judgment on an involuntary nonsuit, taken by plaintiff in consequence of a ruling of the court excluding all evidence, on the ground that the petition did not state facts sufficient to constitute a cause of action. We reversed that for the reasons set out in the report of the case, as will be seen by reference to People's United

States Bank v. Goodwin et al., 148 Mo. App. 364, 128 S. W. 220. On the case again reaching the circuit court, plaintiff filed an amended petition on which the case went to trial. The only amendment made was in the paragraph, found on page 369 of the above cited report, which as amended reads as follows, the words inserted being here italicized:

"That by defendants' said false, malicious and defamatory libel, charging that the funds of the bank (meaning thereby of plaintiff) were being misapplied, said defendants meant and intended thereby to allege and charge that said bank (the plaintiff) on July 6, 1905, was being improperly and illegally managed, directed and conducted in that said funds *of plaintiff* were *then* being misapplied, *meaning that said funds were being misapplied by said bank* to other uses and purposes than those which were lawful and proper under the charter and by-laws of said bank, and the laws of this State, then regulating and directing the management and action of said bank."

Beyond this change the amended petition was as set out in the above cited report and we refer to that, pages 368, 369.

The separate answers of defendants set up that the publication complained of by plaintiff was and is part of a statement prepared in the office of the Postmaster General of the United States and issued by the Post Office Department in and concerning a certain public matter affecting the interests of the United States, to-wit, "the matter of the withdrawal of second-class mailing privilege from the Woman's Magazine and the Woman's Farm Journal, issued by the Lewis Publishing Company of St. Louis, Mo.;" that the said publication is and was a fair representation of the reasons assigned for the issuance of a fraud order which was issued by the Postmaster General of the United States on July 6, 1905, against plaintiff, by virtue of authority given in that regard to the Post-

master General by the statutes of the United States, and that said publication was by the Postmaster General of the United States as a matter of public concern and without malice and was and is privileged. Further answering, defendants deny every allegation in the amended petition contained.

Defendant Goodwin interposed a plea in abatement on the ground of nonresidence and that at the time of service in St. Louis, he was there attending court as a witness in a cause pending in the district court of the United States. This was stricken out on motion.

A reply was filed to each of these answers, denying generally the new matter, and further averring that a long time prior to the publication complained of defendants maliciously and unlawfully conspired with each other and with other persons to discredit and injure the business of Edward G. Lewis and of such companies as he was or might become interested in; that Lewis afterwards became interested in and the president of plaintiff bank and that in furtherance of the unlawful conspiracy the publication by defendants was made of and concerning plaintiff and that the publication or acts of defendants were not privileged.

We may as well state here that no attempt was made to sustain this new matter in the reply, nor any motion made against it. We therefore treat it as out of the decision of the case.

At the close of the evidence offered by plaintiff the court, at the instance of defendants, gave an instruction that plaintiff could not recover, whereupon plaintiff took a nonsuit with leave to move to set it aside. Filing this motion and that being overruled and exceptions duly saved, plaintiff has perfected its appeal to this court. In announcing his ruling on the demurrer, the learned trial judge stated that he thought it should be sustained on the ground that express mal-

ice ought to be shown under the purported admissions introduced by plaintiff.

It is an established rule of decision in this State that the appellate courts are not bound by the reasons assigned by the trial court, however learned that court may be, if, on consideration of the whole case, the appellate court is of the opinion that the conclusion arrived at or the judgment rendered is ·a correct one.

We think that in the case at bar the· demurrer to the evidence was properly sustained, and that too, without confining our reasons to the one assigned by the learned trial court.

The foundation of an action for defamation, whether libel or slander, is the injury done to reputation. [25 Cyc., p. 249, par. A.]

An accepted authority, Abbott's Trial Evidence (2 Ed.), p. 831, in paragraph 1, treating of trials of actions for slander and.libel and of the usual order of proof, places as first in order plaintiff's vocation, if involved.

In the case at bar it will be noticed that the petition, while alleging the incorporation of plaintiff, avers that in the month of November, 1904, plaintiff began the business of banking, and is now a banking corporation under the laws of Missouri. The answers traversed these averments. Then follow, quoting from the alleged libel, the words, "the funds of the institution were being misapplied," and the innuendo that defendants "meant and intended thereby to allege and charge that said bank (the plaintiff) on July 6, 1905, was being improperly and illegally managed, directed and conducted in that said funds of plaintiff were then being misapplied by said bank to other uses and purposes than those which were lawful and proper." It is apparent that the pleader intended, by this form of pleading, to carry back the effect of the alleged libel, alleged to have been published on the 19th of March, 1907, to the condition existing on the 6th of July,

1905, thus placing the injury to its business as occurring while the bank was a going concern. The learned counsel for appellant undoubtedly had in mind the rule that when a corporation is charged to have been libelled in its particular business, that it is an essential element of the actionable quality of language reflecting injuriously on the occupation, that the corporation, when the publication occurred, was engaged in that occupation. To render the publication concerning this plaintiff actionable, plaintiff must prove that it was following or exercising the business and occupation of banking at the date of the publication. [Odgers, Libel & Slander (4 Ed.), pp. 30 and 623.]

Mr. Townshend, in his treatise on Libel and Slander (4 Ed.), Sec. 189, says: "One of the essential elements of the actionable quality of language concerning one in his occupation or office, is the fact that the person whom the language concerns is in such occupation or office (Sec. 181); it necessarily follows that to render language concerning one in his occupation or office actionable *per se,* the person whom the language concerns must follow such occupation or hold such office at the time the language is published. No language concerning one in any special character, published after he has ceased to occupy that character, can be actionable as concerning him in such special character. The general rule is that in an action for language concerning one in a special character, it must be shown that he maintained that special character at the time the language was published (Sec. 386). . . . Whether or not the plaintiff occupied the special character alleged, and whether or not he continued in such special character until the time of the publication complained against, are questions of fact. A person shown once to have been in any certain office, profession, or trade, is presumed to continue therein." In the section referred to (Sec. 181), it is said that language published being connected with

the fact of the special character of the person whom it concerns, must be construed in reference to such special character.

In Newell on Slander & Libel (2 Ed.), p. 175, Sec. 9, it is said that the ground of the action for defamatory words is, that the party is disgraced or injured in his profession or trade, that his general reputation and standing in the community are affected by them; that they become actionable in consequence of the special character of the party of whom they are spoken. "The fact of his maintaining that special character, therefore, lies at the very foundation of the action." If the action be for publishing words of a tradesman concerning his trade, "it must be averred that at the time of publishing them he was in trade, for if he were not at that time in trade, his credit could not be injured by the words. The cases all admit this principle and show that, for slander of a man in his calling, that calling, whatever it might be, had continued, either actually or by intendment, to the time of the speaking of the words."

"As to Libels which touch a man in his office, profession or trade, the same rule applies to written as to parole slander." Folkard's Starkie on Libel & Slander (5 Eng. Ed.), p. 184. It is said in the same work, and possibly by other authors, that there is a distinction here, between slander and libel; that for slander of a person in his office, trade, etc., the action cannot be supported unless the party slandered be in the employment, etc., at the time the slander is uttered, but in libel it is different, and notwithstanding that the person libelled is not in the actual employment, the action may be maintained. But when we examine the case on which this difference is said to rest, the case of Boydell v. Jones, 4 Meeson & W., *p. 450, we find that Baron PARKE said: "Suppose he (plaintiff) had ceased to practice as an attorney—this is not an action for words but for a libel. This is a libel on him as a

man. Suppose he had retired from the profession, and taken his name off the roll, to write of him that whilst he was an attorney, he had been guilty of sharp practice, would be a libel upon him." That is the rule and its reason. The libel was against his character as a man. This is what is ordinarily characterized as an exception to this rule but which Mr. Townshend says will be found not to be an exception but resting on and following another and different rule, which is when the language is actionable "as affecting the individual as such, without regard to his having occupied the special character to which the language refers." We are not prepared to admit that this so-called exception or rule, as illustrated by the remarks of Baron Parke, applies to a corporation when the damages claimed are alleged to grow out of injury to its business, unless it was then a going concern.

"Words written of a corporation and its business, the necessary effect of which is to embarrass it in its business, and actionable *per se,* such words being actionable upon the same theory as are words which are defamatory of a natural person and touch him in his office, profession, or business; and it would seem that oral words concerning a corporation are actionable where their natural tendency is to injure the corporation in its business. However, the law has not as yet so progressed, nor does it apparently tend to such progression, as that in matters of mere reputation and general corporate character, as distinguished from the business which a corporation carries on, a corporation and a natural person are on a parity in the law of libel." [18 Am. & Eng. Ency. of Law (2 Ed.), p. 958, par. 4. (Per WOOLSON, J., in American Book Co. v. Gates, 85 Fed. 729).]

Defamatory words to be actionable must prejudice the one concerning whom they are published in his special profession or business in which he is actually engaged, it is not sufficient that the words merely

be injurious to one, whatever his pursuit. As to the latter, it is immaterial whether he is in business; but as to the former, if the publication is as to his trade, it must appear that he is in that trade when the publication was made. [25 Cyc., pp. 328, 329.]

In the case at bar it is of the very essence of the action that at the time when the alleged libel was published, that is to say, in 1907, plaintiff was then actually engaged and was carrying on the business of banking and that its credit and standing as a banking institution engaged in that business were injured by the publication. What its effect was, if published in 1905, is immaterial to this case. The point in issue is its effect on conditions on the 19th of March of that year, when the libel is charged to have been published. It is true that the defendants, when evidence was first offered in this case, objected to the introduction of any evidence on account of the absence from the petition of any allegation that at the time of the publication of the alleged libel plaintiff was then engaged in business as a banking institution. That objection was overruled and, as we think, properly, for the petition does aver that in November, 1904, plaintiff was duly "granted a certificate  .  .  .  to the effect that said bank had complied with the provisions of said corporation laws; and, during said month of 1904, plaintiff began the business of banking, as such corporation, accordingly, and its franchise and good will as such then became and were of great value, and plaintiff is now a banking corporation under the laws of Missouri." But with this averment, rather meager as it is, even without it, plaintiff was bound to prove that in March, 1907, when the libel is said to have been published, or in 1905, when incorporated, it was a going concern, actually doing a banking business. It is true plaintiff introduced in evidence its certificate of incorporation and its authority to do business; it is also true, as alleged by learned counsel for appellant, that

a state of facts once shown to exist is presumed to continue until the contrary is shown. But the mere fact that a certificate of incorporation and authority to carry on business was issued, is no proof in itself, nor does it even tend to prove or create a presumption, that the corporation had ever actually entered upon the business which it was chartered to carry on. Much less does it tend to show that it was afterwards and when the publication was made, actually engaged in the banking business. There is a complete failure of any testimony even tending to prove this, tending to prove that at the time this publication was made, plaintiff was engaged in the banking business. That learned counsel for plaintiff recognized the necessity of pleadings that plaintiff began the business of banking and is now a banking corporation, is evident from the averment in the petition last referred to. Undoubtedly it was the presence of this averment that led the learned trial court to overrule the attack on the petition.

In the absence of such proof, the alleged libel being directed to its conduct and management of business as a banking institution, plaintiff in this respect has failed to establish its case.

Our conclusion on this point renders it unnecessary to notice any other points made by counsel.

The judgment of the circuit court is affirmed. *Caulfield, J.,* concurs. *Nortoni, J.,* not sitting.

St. Louis Court of Appeals, July 19, 1912.    Motion for Rehearing Overruled October 15, 1912.