## WILLIAM P. HOUSTON v. PULITZER PUBLISHING COMPANY, Appellant.

### In Banc, April 8, 1913.

1. **LIBEL: Jurisdiction.** The circuit court of Macon county has no jurisdiction of a suit for libel instituted by a citizen of Cass county against a corporation whose domicile is in the city of St. Louis and which in that city published the paper which contained the alleged libel and circulated it in Macon county. [Overruling Julian v. Kansas City Star, 209 Mo. 35.]

2. ————: ————: **Unconstitutional Statute.** If old section 997, Revised Statutes 1899, authorizes a citizen to bring a suit for libel in a county in which neither the plaintiff nor the defendant corporation publishing the newspaper resides or has a domicile or place of business, then it would be in violation of the Constitution of Missouri and of the United States. [Following dissenting opinion in Julian v. Star, 209 Mo. l. c. 101.]

Appeal from Macon Circuit Court.—*Hon. Nat M. Shelton*, Judge.

REVERSED.

*Judson, Green & Henry* for appellant.

Defendant's plea to the jurisdiction should have been sustained. There was no waiver, by entry of appearance and the filing of an application for a change of venue, before this plea to the jurisdiction had been passed upon, as there was in the Julian and Cook cases. If the statutes of Missouri are construed to give the Macon Circuit Court jurisdiction of this cause when it would not have had jurisdiction if the article had been published by an individual defendant then they are in violation of those provisions of the Constitutions of the United States, and of Missouri, which guarantee to all defendants due process of law and the equal protection of the law. Caldwell v. Texas, 137 U. S. 624; Brown v. New Jersey, 175 U. S. 172; Barbier v. Connelly, 113 U. S. 31; Durkee v. Janesville, 28 Wis. 464; State ex rel. v. Withrow, 133 Mo. 500.

*John T. Barker, Campbell & Ellison, Silver & Dumm* and *Sanford B. Ladd* for respondent.

There is no merit in defendant's plea to the jurisdiction of the court. The doctrine of *stare decisis* applies. Cook v. Pulitzer Pub. Co., 241 Mo. 326; Julian v. Kansas City Star, 209 Mo. 35; Meriwether v. Knapp Pub. Co., 211 Mo. 213; Branch v. Knapp Pub. Co., 222 Mo. 594; Cook v. Globe-Dem. Pub. Co., 227 Mo. 523; Tilles v. Pulitzer Pub. Co., 241 Mo. 630; Orchard v. Globe Printing Co., 240 Mo. 575.

GRAVES, J.—This cause reached us from Division Two of this court, on the ground of a Federal question being involved. It is an action for libel in which the plaintiff recovered below the sum of $30,000 —$10,000 actual and $20,000 punitive damages. With the view we have of the constitutional question we need not go into the merits of the case. At this point

suffice it to say that our brothers in Division Two were not impressed with the idea of the justness of the verdict because they cut the aggregate sum from $30,000 to $6000.

The details and reasoning upon questions of liability or no liability, libel or no libel, excessive or nonexcessive verdict, must, however, be put aside in the view we take of the law upon the question of the jurisdiction here. To that question only will we address ourselves.

Plaintiff was a citizen and resident of Cass county, Missouri. At the time of the alleged libel he was the Representative of this county in the lower branch of the Missouri General Assembly. What was published of and concerning him by defendant was of him in that capacity. Defendant is a Missouri corporation domiciled in the city of St. Louis, Missouri. The paper it publishes is circulated throughout the State and in Macon county, in this State. Plaintiff, for reasons thought best by himself, did not see fit to sue defendant in the place of its domicile, nor in the county of his residence, but brought his suit in Macon county, many miles distant from either of the other two. The jurisdiction of the Macon Circuit Court was promptly challenged by defendant, and such challenge kept alive from the beginning to the end of the trial, *nisi*, and upon appeal is urged here. Defendant contends, first, that the statutes of Missouri as to service of process do not give the circuit court of Macon county jurisdiction of this cause, and, secondly, that if such is the reading of the statute and the construction to be given it, then such statute is violative of certain provisions of the Federal Constitution, as well as certain provisions of the State Constitution. The Federal question, thus lodged, carried the case from Division to Court in Banc, but now that it is here, all questions are open for discussion and review. We decline to discuss the merits of the case, because we are of opinion that the

constitutional questions determine the case, and a further discussion of the merits would but muddy the waters of jurisprudence. One determinative point in a case is all that need be discussed. If the trial court was without jurisdiction, as we think it was, then we have the one determinative point, and the discussion of others might only lead to confusion. This sufficiently states the case.

I. The case at bar presents for the first time in this court the sole and naked question of our then statute as to service of process and the place of bringing suits (if given the construction contended for by the plaintiff in this case) being violative

**Libel:
Jurisdiction.**

of the Federal Constitution. In this case the question of waiver of jurisdiction is not a factor, because there was no waiver. As said above, the case presents to us for the first time a clear-cut, naked Federal question. It presents the Federal question involved in the Julian case and a school of cases following it, but presents it stripped of all incidents which, under the law and the practice, would preclude a review of the question by the highest tribunal of the land. Personally I had hoped that the Julian case might be left in a position where the question could be settled by the United States Supreme Court, and the differences among our brothers upon this bench finally set at rest. That hope was blighted by the appearance of a concurring opinion which raised a purely State question. Those of us who fostered the idea that both the State and Federal Constitution were violated by the construction given our statute in the Julian case, have never receded from this Federal question in all the cases which followed. We have recognized the majority ruling upon the matter of waiver, but have continuously asserted confidence upon the pure question of jurisdiction under constitutional views. Our position was clearly stated in

Tilles v. Publishing Co., 241 Mo. l. c. 629 et seq., where-
at a majority of this court said:

"The first point made in the brief for appellant
is the one going to the action of the circuit court in
disallowing its plea to the jurisdiction. Several au-
thorities are cited in support of the proposition. The
original motion going to the jurisdiction is elaborate,
and well and carefully worded. Special appearance
is preserved in the motion. At all times thereafter the
defendant undertook to assert the want of jurisdic-
tion. The question was preserved in the answer after
the overruling of the motion. This question, however,
has been so recently gone over by this court in the case
of Julian v. Kansas City Star, 209 Mo. 35, that it
would be useless to rediscuss the question here. The
individual views of the writer and of LAMM, J., are ex-
pressed in the dissenting opinion in the Julian case.
Those views, however, are not the views of the court.
The principal majority opinion in the Julian case, as
well as the minority opinion, left a fair Federal ques-
tion, which Federal question is again urged here. By
a separate concurring opinion in the Julian case, a
State question, finally determining the case, was in-
jected. That question was a waiver of jurisdiction
over the person by reason of filing an application for
change of venue. Upon this particular question, our
court stood four to three. It was a State question,
and operated to obviate a discussion of the real ques-
tion discussed in the Julian case, when such case
reached the Supreme Court of the United States.
What that court may have thought of the real issue
in the Julian case, must, by reason of the injection of
this State question in that opinion, remain as a sealed
book. [30 Sup. Court Rep., p. 406.]

"A reading of the memoranda opinion by the
United States Court, supra, shows that a discussion of
the real question in the Julian case, and the real ques-
tion of jurisdiction urged in this case, was obviated by

the State question aforesaid, discussed in the concurring opinion in the Julian case. The same question of waiver is in the case at bar. The United States Supreme Court has decided that this State question is sufficient to preclude that court from a review of the Federal question. The position of this court on the question of waiver is fixed in the Julian case, so that with these opinions nothing is now left for defendant as to this contention, whatever may be the view of the individual judges.''

It is true the personnel of the bench had changed between the Julian and Tilles cases.

This question of waiver is not in the case at bar. We have only the simple question of jurisdiction or no jurisdiction. Bundled up with the question, as one strand of wire may be bundled with another in a rope, is the Federal question which brought this case from Division to Court in Banc. So that we have here for the first time a clean-cut Federal question unhampered by State questions which will preclude the determination of such Federal question by the United States Supreme Court. Under such situation those of us who in good conscience believed this construction of our statute violative of the Federal Constitution now believe that the diverse views of our members should be settled by the higher authority. This Federal question we fully discussed in paragraph two of the dissenting opinion in Julian v. Kansas City Star, 209 Mo. l. c. 102. To that discussion we might now add additional authorities, but they would be along the line of those there cited and discussed. That discussion should be read in connection with this opinion. In the dissenting opinion in the Julian case we thus concluded:

''We, therefore, think that, if the statute bears the construction given in the opinion, it not only violates

the Federal Constitution, but the State Constitution as well.'' [p. 108.]

From this position we have never personally receded. As said in the cases following the Julian case, we conceded the ruling of this court upon the question of waiver, but never yielded the other question. Our position, in the Julian case, in the dissenting opinion upon this Federal question involving the jurisdiction of the court, *nisi*, we thought good then and so think now. We therefore rule now, as we had hoped to rule then, as is indicated by the short quotation, supra, i. e., that if our old section 997, Revised Statutes 1899, under which the present action was brought, is to be construed as it was construed by the majority in the Julian case, then such section is violative of the Federal Constitution as is more fully discussed in the dissenting opinion in the Julian case. Upon this question the opinion in the Julian case is overruled. Other questions in that opinion are left for a live case.

II. We concede that when the State charters a corporation—the State being the creator and the corporation being the mere creature—many things may be imposed upon the corporation by the law which of necessity enters into and becomes a part of its charter. We concede further that in matters of procedure subsequent laws will bind the corporation. To illustrate, since the Julian case, the Legislature, shocked, evidently by our judgment, passed an act saying that libelers might be sued in either the county of their residence or the county where the plaintiff in the action resides. This law we are not now questioning, and should not question because not in this case. But what we mean is, that if old section 997 is to be given the construction placed upon it by the majority opinion in the Julian case, then the statute violates both the State and Federal Constitution.

Nor will it do to say that, because we hold old section 997, if given such construction in this case, violative of the State and Federal Constitutions, we can not get service upon railroad and insurance companies in counties where they do business, if different from the county of their domicile. This question we answered in the Julian case, supra, 209 Mo. l. c. 100-101.

III. Personally we think, as fully discussed in the Julian case, that this old section 997 can be given a construction, which to my mind should have been done, and which when done would obviate all constitutional objections. But even the construction suggested by us in the Julian case will not avail the plaintiff in this case. That construction would leave the Macon Circuit Court without jurisdiction. We have always firmly believed that the dissenting opinion in the Julian case expressed correct principles of law, and so believe now. If that is true, then in the case at bar plaintiff brought his suit in the wrong court, and the question of jurisdiction having been urged throughout by the defendant, no waiver precludes us from so saying at this time. With this opinion should be read the Julian case, supra. The judgment in this case should be reversed on the ground that the circuit court of Macon county was without jurisdiction to hear and determine the case. Let the order be so made. All concur except *Woodson* and *Bond, JJ.,* who dissent—*Woodson, J.,* in separate opinion.

*Margin note: Jurisdiction: Waiver.*

## DISSENTING OPINION.

WOODSON, J.—While I dissent from the opinion of the majority of my learned associates, yet I believe the judgment should be reversed and remanded for the following reasons:

Was it not for section 14 of the Bill of Rights, I would say that the article published of and concern-

ing the respondent was not libelous; since, however, that section provides that in all libel suits, the jury shall be the judges of both the law and the facts, which in my opinion is unwise, as I think this case shows, nevertheless, I believe it is controlling herein.

I venture the assertion that there is not an intelligent man in this State, to whom, after reading the article upon which this action is based, it would ever occur, that the defendant ever intended to libel Mr. Houston, without its meaning is shown to be different from what it purports upon its face to convey, by the introduction of parol evidence showing its connection with the existence of some extrinsic fact; that the jury may consider the two together is no longer an open question in this State, with which, as a rule, I have no fault to find, for the reason that all contracts and printed matter should be read and interpreted in the light of their surroundings, which in ordinary actions is confined by the courts within reasonable bounds, but not so in libel cases. Under this section of the Bill of Rights the jury are given an unlimited roaming commission, to read any and all articles published of and concerning a person, however innocent within itself, in the light of any other fact or circumstance that may exist and which perhaps the publisher never heard or thought of at the time of the publication. But in a libel suit that fact is of no importance whatever, for the simple reason that if there be a single person living on the face of the wide world who knew of that other fact, and who happened to read the publication and who came to the conclusion in his own mind rightfully or wrongfully that the article sued on referred to said fact, and testified that by reading the article in the light of said fact he understood the article to mean, and that it charged the person with some libelous matter, then a case is made for the jury, to find for the plaintiff, and that, too, upon perhaps the wildest speculation.

In my opinion, the case at bar has no solid foundation upon which to rest, except the fancy of the jury.

In an ordinary action that condition could be lawfully controlled by the court, but under the Constitution, if we give it effect, the jury has that exclusive power, which in my opinion, as previously stated, is unwise and unjust; but as I see my duty I have no authority to annul that provision of the Bill of Rights.

Because of this unjust provision, the courts of this country and those of England have arrogated unto themselves the authority to nullify that and similar constitutional provisions, upon the theory, I suppose, that the ends of justice justify the means; but I have never been able to reconcile my ideas of official duty with the idea that this court has any authority to enact statutes or adopt constitutional provisions, or to repeal the one or abrogate the other by construction, which the people of the State, in legal and solemn form, have enacted or adopted.

However, the amount of the verdict shows conclusively to my mind such passion and prejudice on the part of the jury, that it must also have influenced them in finding upon the merits of the case; and it seems to me that if there ever was a case where the court should exercise its right to grant a new trial upon the ground of passion and prejudice on the part of the jury, this case is that one.

I am, therefore, of the opinion that the judgment should be reversed and the cause remanded for a new trial.