COTTON LUMBER COMPANY, a Corpoartion, Respondent, v. LA CROSSE LUMBER COMPANY, a Corporation, Appellant.

St. Louis Court of Appeals.    Opinion Filed July 12, 1918.

1. **COURTS: Jurisdiction of Court of Appeals: Constitutional Questions.** Where defendant's motion to dismiss, in the nature of a plea to the jurisdiction, which included the question of the constitutionality of section 1755, Revised Statutes 1909, as to venue of actions for libel against corporations, in the absence of waiver of the jurisdictional question, the constitutional question was a live one, and the appeal should have gone to the Supreme Court.

2. ———: ———: ———: **Waiver of Jurisdiction.** But where defendant's motion to dismiss, in the nature of a plea to the jurisdiction, which included a constitutional question, was overruled, and it then appeared generally for the purpose of taking a change of venue, which was granted, and thereafter filed an answer in which no reference was made to its motion to dismiss or plea to the jurisdiction, and did not complain of that ruling in its motion for a new trial, defendant waived the jurisdictional question, notwithstanding its having excepted to the overruling of the motion to dismiss by filing a term bill of exceptions which was afterwards incorporated into its final bill of exceptions.

3. **LIBEL AND SLANDER: Corporations: Damages: Presumptions.** Where the libelous matter is of such a character as to be injurious to the libeled party in respect to the business conducted by it, and herein libelous *per se,* if false, and actionable without proof of special damages, the fact that the libeled party is a corporation does not affect the application of the rule raising the presumption of damages as a result of the publication thereof.

4. ———: **Damages: Compensatory Damages.** The allowance of compensatory damages for libel is a matter resting largely within the discretion of the jury.

5. ———: ———: ———: **Instructions: Verdict.** In an action for libel, defendant cannot complain of a verdict of $300 as compensatory damages under an instruction erroneously given in defendant's behalf confining plaintiff to a nominal sum as compensatory damages in the absence of proof of special damages, where. the words used were libelous *per se*, and therefore raised the presumption of damages.

6. ———: **Corporations: Acts of Manager: Ratification of Libel.** Where the local manager of a corporation wrote libelous letters, and in the action defendant did not repudiate the letters, but put in issue the allegations in the petition regarding their falsity, and sought to prove their truth, and retained the manager in its employ, malice in the writing was attributable to the corporation.

7. ———: **Damages: Punitive Damages: Presumption of Malice: Instructions.** Where the libelous matter was such that malice would be presumed from its publication, an instruction which sought to have the jury told that punitive damages could not be allowed, unless it were found that the sending of the libelous matter was actuated by feeling of ill will or hatred toward the plaintiff or reckless disregard of the consequences of the act in doing so, was properly refused.

8. **TRIAL PRACTICE: Remarks of Counsel: Failure to Reserve Objections.** Where plaintiff's counsel was admonished to keep within the record after improper remarks, and the defendant did not request any further rebuke, nor an instruction to disregard the remarks. nor to discharge the jury, defendant could not complain that it was prejudiced by the remarks.

9. ———: **Several Counts in Petition: Verdict: General Verdict.** Where the first count of the petition sought recovery for libel by two letters, and the second and third counts merely set up, as separate causes, the writing and the publication of the same letters, and the case was tried without reference to the various counts, and defendant's own instructions requiring a finding, prerequisite to recovery, that both letters were libelous, defendant could not complain of the general verdict, which disposed of every issue in the case and operated as a bar to any future action upon either of the publications in suit.

10. **LIBEL AND SLANDER: Damages: Punitive Damages: Evidence.** Evidence *held* to warrant an award of punitive damages in an action for libel by publishing letters.

11. ———: ———: ———: ———: **Financial Condition of Defendant.** In determining the amount to be allowed as punitive damages for libel, the jury may consider defendant's financial worth, together with other facts and circumstances in the case touching the matter.

12. ———: ———: **Excessive Damages.** In an action for libel by writing letters to prospective customers of plaintiff, *held*, that the appellate court would not interfere with a judgment for $300 compensatory damages and $5000 punitive damages.

Appeal from the Circuit Court of Monroe County. —*Hon. William T. Ragland*, Judge.

AFFIRMED.

*Robinson & Goodrich, E. T. Fuller and Hostetter & Haley* for appellant.

(1) The remarks of counsel for plaintiff in their argument to the jury went far beyond conventional limits and amounted to misconduct on their part and unquestionably aroused and inflamed the jury into a bitter hostility against defendant. This court and other courts have not hesitated to condemn such misconduct and to overturn verdicts procured by similar improper and reperhensible "grand stand plays" and cunning and artful appeals to the baser and unjudicial emotions and prejudices of jurors. Pledge v. Griffith, 199 Mo. App. 303; Bergfeld v. Dunham, 201 S. W. 640, 641; Levels v. Railroad, 196 Mo. 622, Subdiv. 5 et seq; Wendler v. Peoples House Furnishing Co., 165 Mo. 542. (2) The verdict for $300 actual damages was unsupported by any evidence and was actually returned in the face of an instruction of the court that only a nominal sum should be allowed plaintiff as actual damages, even though the jury should find that the letters were libelous. True, plaintiff did allege in the first count of its petition that it has lost the patronage and trade of customers, without naming them. No evidence was offered in support of this allegation and under the pleadings no such evidence was admissible because where a loss of customers is claimed, plaintiff cannot give in evidence the loss of any whose names are not specified. Newell on Slander and Libel (3 Ed.), p. 949. (3) The petition is in three counts. The first alone pleads special damages by averring loss of customers,

etc. The verdict is general and does not find on either count. Where there are several causes of action some good and some bad, a general verdict will not be upheld because it is impossible to tell whether the verdict was based on the good or the bad counts, or how much of it rests on the good and how much rests on the bad counts. Brownell v. P. R. R. Co., 47 Mo. 243, and cases there cited; Christal v. Craig, 80 Mo. 371; Mooney v. Kennett, 19 Mo. 553; Anderson v. Shockley, 181 S. W. (Mo.), 1154 The jury are as much bound by instructions in a libel case, except as to its right to determine whether or not the writing in controversy is libelous, as in any other case. Arnold v. Jewett, 125 Mo. 241, 252. (4) The damages are excessive, both actual and punitive, and the amount of each class of damages is clearly indicative of passion and prejudice on the part of the jury. Where it is patent that a verdict is the result of passion and prejudice, the cure will not be by enforcing a remittitur, but it is vitiated to such an extent that it will be reversed. Harper v. R. R. Co., 172 S. W. (Spring. Ct. of Apps.), 59 and cases there cited; Boyce v. Wheeler, 197, Mo. App. 311 and 316. (5) The court erred in refusing defendant's instruction No. 1 which told the jury that in no event could more than one cent be found as actual damages. The jury in this particular were required to be governed by the instructions of the court, notwithstanding this is a libel suit. Arnold v. Jewett, 125 Mo. 252. (6) The court erred in refusing defendant's instruction No. 3. This instruction told the jury that if Mr. Munroe wrote and mailed the letters complained of without the direction, knowledge or consent of any officer of defendant, then punitive damages could not be assessed against defendant. "Where libelous language is inserted in a newspaper by a reporter, without the knowledge or consent of the proprietor, the latter is liable to the extent of compensatory damages, and for punitive damages only on proof from which his approval of his employee's conduct may be legally inferred." Haines v. Schulz, 50 N. J. Law (21 Vroom.) 481, 14 Atl. 488. "The principal is not responsible in ex-

emplary damages for the actual malice of his agent in publishing a libel unless he has participated in or retified and confirmed the malicious act of the agent." Eviston v. Cramer, 57 Wis. 570. (7 & 8) The court erred in refusing defendant's instruction Numbers 4 and 5. (9) The court erred in giving plaintiff's instruction No. 5. The first paragraph of the above instruction is erroneous in that it refers to actual damages and puts it up to the jury as though that body had the power to assess such damages in such substantial sum as they might find would compensate plaintiff. (10) The circuit court of Shelby county erred in overruling defendant's motion to dismiss the cause and it acquired no jurisdiction over defendant and the circuit court of Monroe county likewise acquired no jurisdiction. The plaintiff corporation maintained an office in Shelby County as well as in other counties in Missouri. Sec. 1755, R. S. 1909, is relied on by the plaintiff corporation as furnishing authority for the institution of this suit against the defendant corporation in Shelby county and sending the summons to Pike county and serving it there. It is clearly apparent that the lawmakers when they enacted section 1755 had in mind an individual when they gave authority to sue in libel cases in the county !'in which plaintiff resides.''

*Frank W. McAllister, James P. Boyd, John S. Fitzgerrell* and *John T. Gose* for respondent.

(1)  A. Complaint of alleged improper remarks of counsel which were not called to the attention of the trial court in motion for a new trial will not be reviewed on appeal. Staffer v. Railroad, 243 Mo. 323; Eppstein v. Mo. Pac. Ry. Co., 197 Mo. 738; Northrop v. Diggs, 146 Mo. App. 152; Vawter v. Hultz, 112 Mo. 639; Booker v. Railroad, 144 Mo. App. 281. B. No alleged improper remarks whatever were complained of in the motion for a new trial and only two were complained of in the supplemental motion for a new trial filed four days later. The third alleged

remark reffering to "lumber trust whose purpose was to extortion on the users of lumber, particularly the farmers" not being complained of, and called to the attention of the trial court in either of the motions for a new trial will not be reviewed by this court.   Cases cited under A., supra, also: Sterrett v. Met. Ry. Co., 225 Mo. 106; Lumber Co. v. Niedermeyer, 187 Mo. App. 188.   C.   After defendant's objections were sustained, there was no request by defendant for a rebuke or further rebuke and no adverse ruling thereon, hence there is nothing for this court to consider.   Dutcher v. Railroad, 241 Mo. 137, 176; Norris v. Railroad, 139 Mo. 719, 720.   (2) "Any publication which imputes to a merchant or other business man conduct which is injurious to his character and standing as a merchant or business man is a libel *per se*.   This ruling is supported by all the authorities we have consulted." Dobbin v. Railroad, 157 Mo. App. 698.   Plaintiff's case did not depend upon proof of actual damages.   Upon a finding of libel, the extent of the injury and the amount of the verdict is peculiarly the province of the jury. Sotham v. Telegram Co., 239 Mo. 624.   "The jury are in no way bound to give nominal damages only; they may read the libel and give such substantial damages as will compensate the plaintiff for such defamation." Newell on Slander and Libel (3 Ed.), sec. 995; see also: Brown v. Knapp & Co., 213 Mo. 697; Hayward v. Maroney, 86 Conn. 261; Markham v. Russell, 94 Mass. (12 Allen), 573; 90 American Decisions 164; Bishop v. Journel Newspaper Co., 168 Mass. 327; Sanders v. Hall, 22 Tex. Civ. App. 282; Richter v. Stolze, 158 Mich. 594; Price v. Clapp, 119 Tenn. 432; Turner v. Hearst, 137 Cal. 232; Lick v. Owen, 47 Cal. 259; Sanderson v. Caldwell, 45 N. Y. 406; Newell on Slander and Libel (3 Ed.), sec. 988, page 1017.   (3)   Where there is really but one cause of action stated in a different manner in different counts so as to meet any possible state of facts; or where the verdict

necessarily disposes of all the issues in the case and precludes any further liability on part of defendant for matters alleged in the petition, or where other counts are treated as abandoned, then a general verdict is sufficient. Allen v. Railway Co., 84 Mo. 657; Boeger v. Langenberg, 97 Mo. 397; Polston v. See, 54 Mo. 291; Courtney v. Hamlin, 150 Mo. 277; Clemens v. Collins, 14 Mo. 604; Daugherty v. Railway Co., 62 Mo. 555; Moffett v. Turner, 23 Mo. App. 196; Owens v. Railroad Co., 58 Mo. 386, 394-395; Bradley v. Kennedy, 2 Green (Iowa), 231; Gosling v. Morgan, 32 Penn. St. 273, 276; Massucco v. Tomassi, 80 Vt. 194; Hurley v. Chicago, 159 Ill. App. 92; Richmond v. Whittelsey, 2 Allen (Mass.) 230; Bradshaw v. Perdue, 12 Ga. 510. (4) Remembering the character of the libelous letters, the fact that defendant retained the writer in its employ and apparently approved of his conduct; considering the wealth of defendant and the purpose of exemplary or punitive damages, the amount of the verdict is not in any wise indicative of passion or prejudice on the part of the jury. Brown v. Globe, 213 Mo. 653-654; Brown v. Knapp & Co., 213 Mo. 655, 697; Sperry v. Hurd, 185 S. W. 174; Buckley v. Knapp et al., 48 Mo. 162; Trimble v. Foster, 87 Mo. 54; Polston v. See, 54 Mo. 291; 8 R. C. L. 606-608, secs. 151, 152; Williamson v. Eckhoff, 185 Mo. App. 234; Schafer v. Otsman, 148 Mo. App. 650, 651; Leavell v. Leavell, 114 Mo. App. 33; Brown v. Globe, 213 Mo. 654. (5) The court did not err in refusing defendant's instruction No. 1 limiting the finding of the jury to one cent actual damages. The words being libelous *per se* this instruction was clearly erroneous. It was erroneous anyway since there was proof of actual damages. See authorities under 2, supra. (6) The court did not err in refusing defendant's instruction No. 3. It would authorize the jury to find for defendant even though the libel was published by its agent in his endeavor to promote defendant's business within the scope of his admitted authority, or even though

defendant approved or ratified the act of its manager thereafter. Lampert v. Drug Co., 238 Mo. 409; Brown v. Knapp, 213 Mo. 655; Brown v. Globe, 213 Mo. 653-654; Penn. Iron Works Co. v. Henry Vogt Machinery Co., 139 A. S. R. 504 Ky. 497, 8 L. R. A. (N S.) 1023; Hardoncourt v. North Penn. Iron Co., 225 Pa. St. 379, 74 Atl. 243; Philadelphia W. & B. R. Co. v. Quigley, 21 How. 202, 16 L. Ed. 73; Citizens Life Insurance Co. v. Brown, 1904 Law Reports, Appeal Cases, page 423. (7) Defendant's refused instruction No. 4 was erroneous. Where the words are libelous *per se* the law implies malice and plaintiff does not have to prove actual malice. "That exemplary damages may be based alone upon a publication libelous *per se,* we have many authorities from many States, "citing, among others cases, Buckley v. Knapp, 48 Mo. 152, in which last-mentioned case it was said: 'When slanderous words are spoken, or a libelous article is published falsely, the law will affix malice to them. There is no necessity of proving express malice. (Hundon v. Garner, 22 Mo. 423; Goetz v. Ambs, 27 Mo. 28)."' Brown v. Knapp & Co., 213 Mo. 693. "And, without proof of actual malice, the jury were at liberty to give the plaintiff such exemplary damages as they might have believed it proper for them under all circumstances of the case to impose as a punishment upon the defendant. Id." Wood v. Hilbish, 23 Mo. App. 400. See also: Callahan v. Ingram, 122 Mo. 355, 371, and cases cited; Arnold v. Sayings Co., 76 Mo. App. 182; Ferguson v. Chronicle Pub. Co., 72 Mo. App. 465; Wood v. Hilbish, 23 Mo. App. 389, 399 and 400; Newell on Slander and Libel, sec. 401, p. 402, also page 843. (8) Defendant's refused instruction No. 5 was, like its refused instruction No. 3, erroneous because it denied to plaintiff the right of recovery unless "defendant directed the letters to be written and sent, or knew thereof and assented thereto." See authorities cited under 6, supra. (9) Appellant's complaint

of this instruction because it authorizes the jury to award actual damages in more than a nominal sum is without merit because: a. The letters being libelous per se the jury were at liberty to award actual damages independent of proof. b. Actual damages were in fact proven. c. Appellant's given instruction No. 4 (Abstr. p. 206) closes its mouth since it authorizes the jury to find actual or compensatory damages in same manner. For plaintiff's right to this instruction, see authorities cited under 2 supra. (10) A. Sec. 1755, R. S. 1909, applies to all plaintiffs, individuals, partnerships or corporations. B. If it did not, appellant could not now raise the point since it took a change of venue and entered its general appearance. Cook v. Globe Printing Co., 227 Mo. 521, 522, 566; Julian v. K. C. Star, 209 Mo. 72, 94 et seq. "It was also held in that case that when the defendant filed its application for a change of venue, it entered its general appearance in the cause, and even though the process might not have been sufficient to give jurisdiction over the person up to that point in the case by making the application for the change of venue it waived the jurisdiction of the circuit court in which the action was brought over its person, and could not afterwards avail itself of its objection to the jurisdiction of the court over its person. (Feedler v. Schroeder, 59 Mo. 364; Baisley v. Baisley, 113 Mo. 551; Rodney v. Gibbs, 184 Mo. 18; Meriwether v. Knapp, 211 Mo. 199)."

ALLEN, J.—This is an action for libel. The trial below resulted in a verdict in plaintiff's favor for $300 compensatory damages and $5000 punitive damages. From a judgment duly entered thereon the defendant prosecutes this appeal.

Plaintiff is a corporation under the laws of Missouri engaged in the lumber business, having its chief office and principal place of business in Shelby County, Missouri. The defendant is likewise a corporation under the laws of Missouri engaged in the lumber

business, with its chief office and principal place of business in Pike County, Missouri. The suit was instituted, on April 28, 1915, in Shelby County, but the summons was directed to the sheriff of Pike County by whom it was served upon the defendant in that county. On June 7, 1915, defendant filed in the circuit court of Shelby county a motion to dismiss the action, the motion being one in the nature of a plea to the jurisdiction on the ground that by the service of summons aforesaid the court acquired no jurisdiction over defendant. This motion was overruled, defendant excepting; and thereupon defendant applied for and was granted a change of venue, and the cause was transferred to the circuit court of Monroe county. Thereafter, to-wit, on July 21, 1915, defendant filed its answer, and the case proceeded to trial, in the circuit court of Monroe county, on December 2, 1915, resulting in the verdict and judgment mentioned above.

The petition is in three counts. The first count, after making certain prefatory averments regarding the two corporations, alleges, in substance, that both plaintiff and defendant are engaged in the retail and wholesale lumber business, and that each have an office in Bowling Green, Pike County, Missouri; that prior to the time of the alleged libel plaintiff, as a retailer, maintained a good reputation and credit; and that on the —— day of ———, 1914, at its office in Bowling Green, defendant wrote and signed by its agent. Hugh Monroe, who was then manager and in charge of defendant's office at Bowling Green, certain letters which were addressed and mailed to persons in Pike County who were customers of plaintiff, "falsely, maliciously and wrongfully with the intent to cause the said customers to believe that the plaintiff kept inferior, rotted, knotty, cheap lumber, laths, lime, cement and plastering and other building material and had for sale and sold said inferior, rotted, knotty, cheap lumber, laths, lime, cement and plastering as first class lumber, and said laths, lime, cement and plastering as first class materials and represented them to be of grades superior to the

real grades of such materials, and that the plastering material it sold was of inferior quality and that defendant fraudulently represented said materials to be of poor quality and that the plaintiff was dishonest and would deceive said parties.''

The two letters in question, of date March 21st and March 26, 1914, respectively, thus charged to have been written and published by defendant, are set out in this count of the petition. Omitting the printed heading of defendant's stationery upon which they were written, they are as follows:

Bowling Green, Mo.
3/21/14.

"Mr. H. Muhlert,
"B,G. R. F. D.
"Dear Sir:

"I do not propose to have any competitor undersell me, I know what my competitor has in stock as I have seen most of it, and I know that his qualities are not good. He probably showed you some good boards, but I invite you to compare his grades carefully with mine, go right down into the piles and see what is below the first lair or two. I know they cannot be better than mine because mine are straight grades. Ask him why he piles his lumber in the drive way instead of unloading from the wagon into his bins. Another thing I want to call your attention to the quality of his lath. They are so hard and brittle that you cannot get a good wall if you use them, again he has no Acme cement plaster. Ask any plasterer what is the best plastering material he will tell you Acme, he cannot get a bag of it. Again I'll bet he did not show you his 6 inch flooring, compare it with ours and judge for yourself.

"I saw his so called Fir Drop Siding, and call it by another name. I call it Western Hemlock, and will leave it to any competent judge if correct or not. Again—did he give you a list of items he agrees to furnish and sign up same if so, compare items with our contract and see if he has left off

200 M. A.—2

anything, and if he specifies the grades. If he does not furnish you a .list of items written by himself and duly signed, look out for a trap. I will furnish you a piece of genuine fir, compare this with his so-called fir, and judge for yourself. Now Mr. Muhlert after you have satisfied yourself regarding these remarks bear in mind that I am very anxious to sell you this bill and will let all grades I have figured stand as they are and offer the bill for $115.

"Yours truly, H. G. Munroe."

"Bowling Green, Mo.
3/26/14.

"Mr. H. Muhlert,
"BG. R. F. D.
"Dear Sir:

"I figured a bill of lumber for Williams a few days ago for a chicken house. I figured everything on the bill of No. 1 quality, excepting sheathing to nail the shingles to which was No. 2 quality, I figured the bill for less money than it could possibly be sold for by any other company, but Mr. Cotton's manager talked him into buying the bill from him. I saw the material Cotton furnished to him and if it wouldn't be too much trouble to you I wish you could see it too. The barn boards he furnished were number 3 two grades below what I figured and the boards are rotten, have rotten streaks full length that I showed William I could poke my lead pencil through.

"The flooring same quality of 6 inch is full of black loose knots and is blackened by sap stains.

"Now, Mr. Muhlert, we are treating you honestly, we furnish exactly what we figure, but I ask you confidentially what show has a man got to get business when people will tolerate and accept this kind of material in contrast to honest treatment and honest figures and qualities.

"I have been manager here for 18 years and the people always got a square deal and they know it.

So far as I know my honesty has never been questioned.

"When I tell you I am offering you a bill for less money than you can get it for anywhere else, I mean exactly what I say—I defy any company to furnish your bill same quality as I figured for the amount of money, and you can send the bill anywhere you please and you will find that I am correct. We can and will beat any company anywhere on the same quality of material.

"Please investigate and find out if I am right.

"Yours very truly,

Munroe, Manager."

And it is alleged that by the writing and publication of these letters defendant made "false, fradulent, malicious and libelous publications as to plaintiff's honesty, business methods and the conduct of its business to the customers of plaintiff," and that thereby plaintiff lost customers and business, and "was otherwise injuried in its good name and reputation as a business corporation.

The prayer of this count is for $2000 actual damages and $10,000 punitive damages.

As to the second and third counts of the petition it need only be said that the former is based upon the letter of date March 21, 1914, supra, and the latter upon the letter of March 26, 1914, supra. In neither of these counts is it alleged that plaintiff lost customers or business by reason of the alleged libelous publication, but in each it is averred that plaintiff suffered actual damages in the sum of $2000, for which sum, together with $10,000 punitive damages, judgment is prayed.

The answer, after admitting the truth of the allegations of the petition regarding the corporate existence of defendant, the character of its business, location of its principal office, etc., denies that defendant "either wrote or published, or caused to be written or published, or authorized anyone to write

or publish, of or concerning plaintiff, either of the letters or any of the matters or things in plaintiff's petition mentioned or set forth." The answer then admits that one H. G. Munroe, who had for a number of years been in defendant's employ, wrote and mailed the two letters referred to in plaintiff's petition, but denies that they were written or mailed maliciously, falsely or with the purpose and intent charged in the petition, and denies that plaintiff sustained any damages by reason thereof. And further answering defendant says that as to all other allegations of the petition, not specifically admitted or denied, it has no knowledge or information sufficient to enable it to form a belief.

The evidence discloses that defendant corporation operates in all twenty-nine retail lumber yards at different points in Missouri and Illinois, and that for many years it has maintained a retail yard at Bowling Green, conducted by one Hugh Munroe, as defendant's local manager. In 1913 the plaintiff corporation also established a retail lumber yard at Bowling Green and, one Weathford was placed in charge thereof, as manager.

William Muhlert and Herman Muhlert, brothers, lived upon farms near Bowling Green. Shortly prior to March 21, 1914, William Muhlert bought a small bill of lumber from plaintiff. Munroe, defendant's manager, had submitted prices on this lumber. Shortly thereafter Herman Muhlert, desiring to purchase certain building material, submitted to both Munroe and Weathford, managers respectively for defendant and plaintiff, a list of the materials desired with the request that each "figure on" the same. The lumber was eventually bought by Herman Muhlert from plaintiff company, but while the matter was pending the two letters set out in the petition were written by defendant's manager. It appears that after receiving the letters Muhlert became quite suspicious as to the quality of plaintiff's material, and made an exhaustive inquiry of Weathford concerning the same prior to

purchasing it, but that he finally became satisfied and gave plaintiff the order, after the total price had been reduced by $7. At the time of such purchase after a lengthy conversation with plaintiff's manager, Muhlert told the latter of these letters and afterwards delivered them to plaintiff.

Such other facts as may appear to be necessary to a determination of the questions before us will be stated in the course of the opinion.

The overruling of defendant's motion to dismiss, in the nature of a plea to the jurisdiction, is assigned as error. It is said that the circuit court of Shelby county acquired no jurisdiction over defendant, and that consequently the circuit court of Monroe county obtained none. This assignment of error should be disposed of before considering the other questions raised.

The course pursued by plaintiff, in instituting the action in Shelby County and causing service to be had upon defendant in Pike County, is in conformity with section 1755, Revised Statutes 1909, which provides as follows:

"Suits for libel against corporations shall be brought in the county in which the defendant is located, or in the county in which the plaintiff resides; and when suit is instituted in the county in which the plaintiff resides, summons may be issued to and served by the sheriff of the county in which the defendant is located."

It was contended by defendant below, and such is its contention in its brief here, that this section was intended to have application only where suit was instituted by a natural person against a corporate libeler, and not where both plaintiff and defendant, in an action for libel, are corporations. But under the circumstances this contention need not receive consideration. The motion to dismiss was also predicated upon the proposition that this statute is unconstitutional and void for the reason, among other things, that it denies to a corporate libeler the equal protection of the law. And though the appeal was taken to this

court, this constitutional question is referred to in appellant's brief as though it were a matter upon which this court could pass.

It is not necessary to say that if there is a live constitutional question in the case on appeal then this court is wthout jurisdiction and the case must be transferred to the Supreme Court. We are of the opinion, however, that no constitutional question is presented by the record, and that none was involved when the appeal was taken.

It is quite true that there is no warrant in law for the course pursued in attempting to bring defendant into court unless it be by virtue of the provisions of section 1755, supra. And this section has been quite recently declared unconstitutional and void by the decision of the Supreme Court in McClung v. Pulitzer Publishing Co., not as yet reported, following the reasoning of the opinion of the court in banc in Houston v. Publishing Co., 249 Mo. 332, 155 S. W. 1068, though this section was not directly drawn in question in the last-mentioned case. At the time of the trial of the case now before us, and of the granting of the appeal therein, this statute had not been directly adjudged unconstitutional; for though it seems quite clear that under the law as declared in the Houston case the statute must fall, since its validity was not involved in that case (as the court states in the opinion therein) the question as to its constitutionality was not a matter in judgment. Consequently, absent a waiver by defendant of its jurisdictional question, which included the constitutional question, supra, the constitutional question was a live one and the appeal should have gone to the Supreme Court. But we are of the opinion, for the reasons to be noted, that defendant has waived its objection to the jurisdiction below; and that we have jurisdiction of the appeal, with no jurisdictional question presented by the record.

After defendant's motion to dismiss had been overruled, defendant appeared generally for the purpose of taking a change of venue, and was granted

such change. Under the rulings of the Supreme Court in Julian v. Kansas City Star Co., 209 Mo. 35, 1. c. 72-94 et seq., 107 S. W. 496; Cook v. Globe Printing Co., 227 Mo. 471, 1. c. 521, et seq., 127 S. W. 332, it would seem that the defendant, by thus appearing for this purpose, waived its objection to the jurisdiction of the circuit court of Shelby county over it and could not afterwards avail itself of such objection. But whether this would be true had defendant undertaken to thereafter keep alive the jurisdictional question, we need not say. Defendant did not undertake to keep the question alive, as it is said was done in Houston v. Pulitzer Publishing Co., 249 Mo. 332, 155 S. W. 1068. It is true that defendant excepted to the action of the court in overrulling its motion to dismiss, and filed a term. bill of exceptions covering the matter, whch term bill defendant afterwards incorporated into its final bill of exceptions. But after the change of venue had been had, defendant filed an answer in which no reference was made to its motion to dismiss or plea to the jurisdiction. And though, as said, defendant's exception to the overruling on the motion appears in the bill of exceptions, defendant did not complain of that ruling in its motion for a new trial, whereby it lost the benefit of its exception.

Under these circumstances we think that defendant waived its objection to the jurisdiction and lost its right to challenge the validity of this judgment on that ground.

Appellant insists that "the verdict for $300 compensatory damages is unsupported by the evidence, is contrary to the instructions of the trial court, and the court erred in refusing to strike it down." And in this connection may be considered also the assignment of error that the court erred in refusing an instruction offered by defendant which told the jury that in no event could more than one cent be found as actual damages.

The court in fact did give an instruction telling the jury that there was no evidence that plaintiff had

sustained any substantial damages on account of the writing and mailing of the letters in question, and that even though the jury found from the evidence that the letters were libelous still they were "not authorized to find a substantial sum as actual damages in favor of plaintiff," but could "only find a nominal sum in any event as compensatory damages." In giving that instruction we think that the court erred to the prejudice of respondent; for it appears that the letters contain charges prejudicial to plaintiff in its business, and hence libelous per se, if false, and actionable without proof of special damage. The fact that plaintiff is a corporation does not affect the application of this rule where the libelous matter is of such character as to be injurious to the corporation in respect to the business conducted by it (See Peoples U. S. Bank v. Goodwin, 167 Mo. App. 211, 1. c. 218, 149 S. W. 1148). The evidence abundantly establishes the falsity of such charges, and damages are presumed to have followed as the result of the publication thereof. But the jury did in fact return a verdict for $300 compensatory damages. Doubtless the jury regarded this as a "nominal amount," within the meaning of the court's instruction; but be this as it may, the verdict as to compensatory damages is amply warranted, since plaintiff was entitled to be compensated for the damages presumably suffered by it under the circumstances, the allowance therefor being a matter resting largely within the discretion of the jury. [See Brown v. Knapp & Co., 213 Mo. 655, 1. c. 697, 112 S. W. 474; Brown v. Globe Ptg. Co., 213 Mo. 611, 653, 654.]

These assignments of error are therefore ruled against appellant.

Error is assigned to the action of the court in refusing defendant's instruction No. 3. By this instruction defendant sought to have the jury told that if Monroe, defendant's manager at Bowling Green, wrote and mailed the letters in question without the direction, knowledge or consent of any officer of defendant, then punitive damages could not be assessed against de-

fendant. It is urged that though defendant corporation be liable to respond in compensatory damages for the act of said agent, it cannot be mulcted in punitive damages for an unauthorized act of its agent; that though the agent acted maliciously, or under circumstances from which malice would be implied by law, such malice cannot be imputed to the corporation unless it appear that the latter in some way authorized the act or afterwards ratified it. Appellant relies upon the following cases, viz: Haines v. Schulz, 50 N. J. Law 481; Eviston v. Cramer, et al., 57 Wis. 571. But whatever view may be taken of these cases, later decisions of the same courts are authority in support of the action of the court below, in refusing this instruction, under the circumstances of this case. [See Hoboken Printing Co. v. Kahn, 59 N. J. Law 221; Pfister v. Milwaukee Free Press Co., 139 Wis. 627.]

The evidence shows that Munroe was defendant's local manager in immediate, active and full charge and management of its business at Bowling Green, with authority to exercise his own judgment in regard to soliciting business and conducting correspondence pertaining thereto. Defendant did not at any time or in any manner repudiate the acts of its said manager in writing and publishing these letters. On the contrary defendant put in issue the allegations in the petition regarding the falsity thereof, and at the trial sought to make it appear that the charges were indeed true. And its manager, Munroe, was not discharged but remained in defendant's employ at the time of the trial below. Under the circumstances, in any event, we think that the malice by which Munroe was actuated, or is to be regarded as having been actuated, is attributable to the defendant corporation, and that this instruction was properly refused. [See Pfister v. Milwaukee Free Press Co., supra, l. c. 655, 656.] And what we have said also disposes of the assignment of error relating to the refusal of defendant's instruction No. 5.

Complaint is made of the refusal of defendant's instruction No. 4, by which it was sought to have the jury told that punitive damages could not be allowed unless it were found that the "sending" of these letters "was actuated by feelings of ill-will or hatred toward the plaintiff or reckless disregard of the consequences of the act in doing so." But this instruction was properly refused, for the reason that owing to the character of the charges contained in the letters malice will be presumed from the publication thereof.

It is charged that one of respondent's counsel made certain improper remarks in addressing the jury, prejudicial to appellant. The language of which appellant complains is not set out *verbatim* in the bill of exceptions, the bill purporting to contain merely the substance thereof; but without regard to this, it is quite clear that appellant is not in a position to urge that it was prejudiced by reason of any such remarks. The record shows that the court sustained appellant's objections to the remarks in question, "and admonished counsel to keep within the record." Appellant did not request that any further rebuke be administered; nor did appellant request the court to instruct the jury to disregard such remarks, or to discharge the jury. If appellant desired that the court do more than it did in respect to the matter, it was appellant's duty to make specific request therefor. [See Milliken v. Larrabee, 192 S. W. 103, l. c. 106, and cases cited.]

There is no merit in the contention that since the petition is in three counts this general verdict cannot be allowed to stand. The second and third counts of the petition merely set up, as separate causes of action, the writing and publication of the two letters sued upon in the first count. The case was tried throughout below without reference to the various counts of the petition. Defendant's own instructions required the jury to find that both letters were li-

belous in order to return a verdict for plaintiff. And this general verdict disposes of every issue in the case; and the judgment operates as a bar to any future action upon either of the publications in suit.

Lastly, it is urged that the verdict as to punitive damages is grossly excessive, making the verdict as a whole so excessive as to indicate passion and prejudice on the part of the jury, and that for this reason the verdict should not be permitted to stand. It is true that the verdict awards no inconsiderable sum as punitive damages, an amount which under some circumstances might be regarded as excessive, requiring, at least, a remittitur. But the letters which form the basis of the action contain serious and damaging charges against plaintiff in respect to its business methods, from which malice will be implied. And the evidence makes it appear that such charges were wholly without foundation in fact. That the case made by plaintiff warranted an award of punitive damages we think cannot be doubted. And in determining the amount to be allowed as punitive or exemplary damages, it was proper for the jury to take into consideration the financial worth of defendant, together with the other facts and circumstances in the case touching the matter. While the evidence in regard to the financial worth of defendant corporation does not definitely show the extent of defandant's wealth, it does show that defendant's holdings, are extensive, including twenty-nine separate lumber yards. Defendant's president, in testifying on cross-examination, declined to undertake to estimate the reasonable value of the twenty-nine yards. When asked if they were not worth more than $25,000, he said: "I should judge something." When further asked if they were not worth "half a million," he answered: "No, I could not say; if you ask me what the capital stock was I could tell you." He further testified that the company's sales of the yard at Bowling Green in 1914 approximated $40,000;

that defendant's real estate holdings in Louisiana, Missouri, where defendant's general offices are located, are worth from $10,000 to $15,000; and that defendant owns real estate elsewhere. He was finally asked if defendant company was then worth $500,000; and he replied: "I would not venture to say."

Under the circumstances, in view of the wide latitude allowed the jury in determining the amount to be awarded in such cases, we think that we could not with propriety interfere on account of the size of the verdict.

It follows that the judgment should be affirmed, and it is so ordered. *Reynolds, P. J.,* and *Becker, J.,* concur.