**E. Ross BUCKLEY**

v.

**The BEAUMONT ENTERPRISE.**

**Civ. A. No. 13145, Division B.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Aug. 20, 1964.

Gibson Tucker, Jr., of Tucker & Schonekas, New Orleans, La., for plaintiff.

R. Emmett Kerrigan, of Deutsch, Kerrigan & Stiles, New Orleans, La., and Major T. Bell, of Orgain, Bell & Tucker, Beaumont, Tex., for defendant.

FRANK B. ELLIS, District Judge.

This is a libel action instituted by E. Ross Buckley, a Louisiana resident, against The Beaumont Enterprise, a foreign corporation, seeking damages for allegedly false and defamatory statements made in the Beaumont Enterprise which is published in the State of Texas and distributed, in part, in the State of Louisiana. Service of the complaint was made through the Louisiana Secretary

of State pursuant to LSA–R.S. 13:3471 (1).[1] Defendant now moves to quash service and dismiss the action for the reason that, while the Beaumont Enterprise may be "doing business" within the State of Louisiana, the cause of action for libel did not "result from" a business activity of the Beaumont Enterprise in Louisiana as required by the aforementioned statute.

■ In argument the Beaumont Enterprise concedes that its distribution of newspapers in Louisiana is substantial enough to meet the "minimum contacts" requirements of due process within the meaning of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Cf. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). It asserts, however, that the narrow question is one of State law, to wit, did the actionable libel, if any, result from the "distribution" of the paper in Louisiana, or the "publication" of the Beaumont Enterprise in Texas. Since this Court's determination of personal jurisdiction in diversity cases is determined by state law, Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), it is important to explain why this question is crucial.

Unlike other non-resident corporation statutes, see e. g. the Alabama statute discussed in New York Times v. Sullivan, Ala., 144 So.2d 25, the Louisiana statute, in addition to requiring that a foreign corporation engage in some "business activity in this state" in order to submit itself to personal jurisdiction, also requires that it must involve a "cause of action resulting from such business activity in this state." LSA–R.S. 13:3471. The Louisiana Supreme Court has recognized and applied this princi-

ple in at least two cases. Staley-Wynne Oil Corp. v. Loring Oil Co., 182 La. 1007, 162 So. 756 (1935); Harnischfeger Sale Corp. v. Sternberg Co., Inc., 179 La. 317, 154 So. 10 (1934). On its face, then, the statute reaches for the horizons of due process by requiring only a business activity in the State for jurisdiction, but at the same time provides the caveat that the cause of action must arise out of that particular activity. However, the limiting caveat is somewhat tempered by a backdrop of official and respectable assurances that the Louisiana statute in question reaches the outermost limits of constitutional due process for personal jurisdiction over foreign corporations, thereby indicating that the legislator's intent was to not limit the scope of permissible jurisdiction. LSA–R.S. 13:3471, Explanatory Note; LSA–C.C.P. art. 6, Official Revision Comments, subsection (g); McMahon, The Work of the Louisiana Appellate Courts for the 1961–1962 Term, 23 La.L.Rev. 378 (Feb. 1964) ["With respect to foreign corporations, our existing legislation taps the full potential of jurisdiction *in personam* permitted by the decisions of the United States Supreme Court."]; and McMahon, The Work of the Louisiana Appellate Courts for the 1962–1963 Term, 24 La.L.Rev. 293, n. 11 (Feb. 1964) ["Louisiana, however, has tapped the full potential of jurisdiction in personam over foreign corporations."] See generally, Note, 38 Tulane L.Rev. 166 (Dec. 1963).

The Federal District Courts of this State, when squarely faced with this statute, have applied the statute as they found it and denied jurisdiction where the cause of action did not directly result from the business activity, while at the same time noting that the redactors of the statute had apparently intended no such caveat to limit the scope of jurisdiction. Sonnier v. Time, Inc., 172 F.

---

1. "(1) If the foreign corporation is not one required by law to appoint an agent for the service of process, but has engaged in a business activity in this state, service of process in an action or proceeding on a cause of action resulting from such business activity in this state * * * may be made on any employee or agent of the corporation of suitable age and discretion found in the state."

Supp. 576 (WD La.1959); Nigro v. Eagle Star Ins. Co., 216 F.Supp. 205 (ED La.1963). Cf. LSA–C.C. art. 13. Thus, with the obvious statutory caveat and the equally obvious statutory intent before it, this Court must determine whether or not the cause of action stated in this suit resulted from the admitted business activity of distributing the Beaumont Enterprise in the State of Louisiana.

■ Defendant contends that the cause of action arose in Texas due to the "single publication rule." Briefly stated, this rule says that the actionable libel occurs but once and then at the place where the libelous words were first published, in this case Texas. See Harper and James, The Law of Torts, § 5.16, p. 394 (1956 Ed.). There is no Louisiana case involving the application of the single publication rule in a libel action filed under LSA–R.S. 13:3471. Defendant asserts, however, that Louisiana has adopted the single publication rule in State v. Moore, 140 La. 281, 72 So. 965 (1916) and State v. Briwa, 198 La. 970, 5 So.2d 304 (1941). As this Court has pointed out in Buckley v. New York Times, 215 F.Supp. 893 (ED La.,1963), these cases involve the constitutional venue requirements in a prosecution for criminal libel. As such they are of questionable value in deciding an issue of personal jurisdiction over a foreign corporation doing business in Louisiana when sued in a civil action. More to the point, the dramatic changes effected by statute and judicial decision since International Shoe Co. v. State of Washington, supra, convince this Court that its duty under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) is not fulfilled by a mere mechanical transposition of rules of criminal venue to an interpretation of civil jurisdiction over foreign corporations. The same is true of the civil cases cited in State v. Briwa, supra, which involve the interpretation of a Louisiana statute regulating the official publications of municipalities. In fact, the Louisiana Supreme Court has stated that "(t)he case of State v. Moore, 140 La. 281, 72 So. 965, can have no application to a civil action." Vicknair v. Daily States Publishing Co., 144 La. 809, 81 So. 324, 325 (1919). In short, this Court considers the question here one of first impression in Louisiana and consequently must project how the Louisiana Supreme Court would rule if the question were presented there.

■ This Court concludes that under Louisiana law, insofar as substituted service on foreign corporations is concerned, a cause of action for newspaper libel "results from" the distribution of that newspaper in the State of Louisiana. The only Louisiana case bearing directly on the interpretation of the words "resulting from" in the context of the 1961 amendments to the Louisiana jurisdictional statutes is Home Gas & Fuel Co. v. Mississippi Tank Co., La.App., 143 So.2d 641 (3 Cir.1962). This case has been previously discussed in Sheldon Steel Corp. v. Standard Fruit Co., 219 F.Supp. 521, 526–528 (Del.1963) and by this Court in Jupp v. Global Marine Exploration Co., 227 F.Supp. 604 (ED La.1964). Without reiterating the facts of Home Gas there seems little doubt that its legal holding is that the cause of action need only be a part of the chain of activity which created the "minimum contacts", or, that the particular activity which gave rise to the cause of action need only be a natural result of the general business activity of the foreign corporation within the State.

> "It is not the intention of [the 'resulting from'] section to limit the effect of [LSA–R.S. 13:3471] to *the particular business transaction* which brings on the cause of action, but must be read in context with the entire statute which clearly contemplates that its provisions may be used whenever a foreign corporation is found to have engaged in any business activity in the state." 143 So.2d at 646–647.

That decision is premised on the express policy of LSA–R.S. 13:3471 to achieve the maximum benefit from the "mini-

mum contacts" rule of International Shoe by broadly interpreting the "resulting from" proviso. From this starting point the final answer is not hard to find.

■■ Obviously the cause of action here alleged is a tort and hence governed by the law of the place where the tortious act occurred. Matney v. Blue Ribbon, Inc., 202 La. 505, 12 So.2d 253 (1943); Leflar, The Law of Conflict of Laws, § 110, p. 207 (1959 Ed.). In order to determine where the tort occurred though, reference must be made by Federal Courts in diversity cases to the choice of laws rules of the forum state. Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Modern Farm Service, Inc., v. Ben Pearson, Inc., 308 F.2d 18 (5 Cir. 1962); Restatement, Conflict of Laws, § 7(a); 15 C.J.S. Conflict of Laws § 9 a; 11 Am.Jur. Conflict of 'Laws, § 3. Thus, Louisiana law is employed to characterize "where" the tort occurred.

While there is language in Brian v. Harper, 144 La. 585, 80 So. 885, 886 (1919) indicating that newspaper libel occurs upon publication, the case does not reach the issue of whether distribution in other places might also create a cause of action for libel. On the other hand, an earlier case notes that each "sale or delivery of a written or printed copy of a libel is a fresh publication * * *." Staub v. Van Benthuysen, 36 La.Ann. 467, 469 (1884). And in Vicknair v. Daily States Publ. Co., 144 La. 809, 81 So. 324 (1919), the Louisiana Supreme Court held that jurisdiction *ratione personae* was proper in the parish where the libel was circulated.

More recently the Second Circuit Louisiana Court of Appeals considered the question of "where" an alleged newspaper libel had occurred in order to determine proper venue. There the alleged libel had initially been published in Orleans Parish and subsequently distributed in the Shreveport area (Caddo Parish). Walker v. Associated Press, La.App., 162 So.2d 437 (1964). In holding that venue was properly laid in the parish where distribution had occurred, the Court said that "(t)he wrongful conduct, the circulation of the libel, is shown to have occurred in Caddo Parish," and added that the venue provision "establishes venue in the parish where the wrongful conduct occurred, that is, in this case, in the parish where the libel was circulated." 162 So.2d at 441. Furthermore the Louisiana Supreme Court refused to grant writs in the Walker case, noting that the judgment of the lower court "is correct." 246 La. 374, 164 So.2d 360.

■■ Having ascertained the Louisiana court's policy of broadly interpreting the "resulting from" clause of LSA–R.S. 13:3471, and examining the most recent pronouncement of the highest state court to have passed on the question of "where" the cause of action for newspaper libel arises, this Court concludes that jurisdiction in this case is proper, and therefore denies defendant's motion to quash the service of process and dismiss the action.