Lawrence C. McBRIDE, Plaintiff,

v.

Robert OWENS, Jack Cloherty, Washington Star Communications, Inc., the Times Mirror Company d/b/a the Los Angeles Times Syndicate, the Denver Post, the Sentinel Star Company d/b/a the Orlando Sentinel Star, and Long Island Daily Press Publishing Company, Inc., d/b/a the Long Island Press, Defendants.

Civ. A. No. 77-H-591.

United States District Court, S. D. Texas, Houston Division.

July 10, 1978.

Roger R. Wright, Jr., Houston, Tex., George H. Kolb, Dallas, Tex., for plaintiff.

Glen E. Clover, Houston, Tex., for Robert Owens & Jack Cloherty.

Stuart F. Pierson, Washington, D. C., for Washington Star.

D. L. Case, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for the Times Mirror Co.

Allister M. Waldrop, Jr., Baker & Botts, Houston, Tex., for defendants.

## ORDER

SINGLETON, District Judge.

The above styled and numbered cause is a diversity action brought by plaintiff to recover damages for the publication of an allegedly libelous article in November, 1976, and for the invasion of plaintiff's right of privacy with respect to such article. Defendants are four newspapers, a syndicator of the article, and two individuals who wrote the article. Defendants have filed motions pursuant to Fed.R.Civ.P. 12(b)(2). As to the Rule 12(b)(2) motions of two of the defendants, Washington Star Communications, Inc., and the Long Island Press, the plaintiff has stated that he cannot in good faith dispute them, and therefore they will be granted. As to the other defendants, their motions to dismiss for want of personal jurisdiction under Rule 12(b)(2) will be addressed after a summary of the facts that appear from the record on file.

## I. FACTS

Plaintiff's first amended original complaint alleges that Robert Owens and Jack Cloherty, individuals residing in Maryland and Virginia, respectively, entered into a syndication agreement to be performed in part in Texas by the writing of various newspaper articles to be forwarded for publication to newspapers in Texas and to be published in certain out of state newspapers, copies of which were shipped into Texas. The syndication agreement was entered into with defendant Los Angeles Times Syndicate (Syndicate) and provided that Owens and Cloherty would furnish an article for publication three times a week in consideration for the Syndicate's selling the articles to newspapers throughout the United States and Canada and remitting to Owens and Cloherty fifty percent of the net proceeds received from such sales. The allegedly libelous article written by these defendants was, according to the amended complaint, forwarded to at least three Texas newspapers for publication and was published in certain foreign newspapers, one or more copies of which were shipped into Texas for sale. Therefore, according to the complaint a tort was committed in whole or in part in Texas.

Affidavits of Owens and Cloherty filed with their motion to dismiss reveal that: (1) defendants are self-employed newspaper columnists; (2) various newspapers throughout the United States contract for the right to publish their articles; (3) at the time the article on which this action is based was published, only three newspapers in the State of Texas had contracted for the right to publish their articles; (4) to the best of defendants' knowledge, information and belief, none of the three contracting newspapers published said article; (5) if any other newspaper in the State of Texas published said article, it was done totally without the authorization or consent of defendants; and, (6) to the best of defendants' knowledge, information and belief, neither the entire article upon which the above lawsuit is based, nor any part thereof, was published in the State of Texas; (7) defendants do not now and have never resided in the State of Texas and they do not now and have never engaged in any direct business activity in the State of Texas.

Answers of the defendants to interrogatories propounded by plaintiff indicate that although no Texas newspaper published the article in question, it was published by defendants Orlando Sentinel Star Company (Star) in Florida, Long Island Press in New York, and Denver Post (Post) in Colorado pursuant to a contract with the Syndicate; that three Texas newspapers had contracted for the right to publish Owens and Cloherty articles at the time the article in question was prepared; that these three Texas newspapers received the article in question but did not publish it; that the Syndicate does not publish any newspapers; that during November, 1976, three articles per week were forwarded by the Syndicate to three Texas newspapers in Dallas, San Antonio, and Corpus Christi for publication; that such newspapers paid for the right to publish Owens and Cloherty articles in amounts between $7.50 and $30.00 per week.

With respect to the Syndicate, the answers to interrogatories further indicate that as of November 27, 1977, the Syndicate had received $850.00 from Texas publishers as compensation for Owens and Cloherty articles; that less than one half of this amount represents the compensation paid to Owens and Cloherty as 50% of net income pursuant to the syndication agreement; that the Syndicate has no control over the shipment into Texas of foreign publications which contracted for the right to publish Owens and Cloherty articles; that the Syndicate maintains an office with a phone in Houston, Texas, staffed by a reporter and researcher; that the Syndicate does no advertising in any literature printed in Texas but does advertise in certain national media journals; that a representative of the Syndicate travels from Chicago to Texas twice a year.

Affidavits of four owners or employees of business concerns offering newspapers for sale (one in Dallas and three in Houston) state that they offered the newspaper published by defendant Denver Post in November of 1976. One of the four affiants also offered the newspaper published by defendant Orlando Sentinel Star at such time.

Joseph McGovern, executive editor of defendant Orlando Sentinel Star states in an affidavit that his company is incorporated and has its principal place of business outside Texas and has no office, agent, or reporter in Texas; that the Star solicits no advertising in Texas; that in November 1976, the Star mailed 20 daily copies of its newspaper to Texas out of an average daily circulation of 182,727 and 20 Sunday copies out of an average Sunday circulation of 207,815; and that the Star solicits no newspaper subscriptions in Texas.

Robert H. Zeis, business manager of defendant Denver Post Company states in an affidavit that his company is incorporated and has no office, agent, or reporter in Texas; that the Post solicits no advertising in Texas; that in November, 1976, the Post mailed 69 daily copies of its newspaper to Texas out of an average daily circulation of 254,961 and 585 Sunday copies out of an average Sunday circulation of 341,506; and that the Post does not solicit subscriptions in Texas.

## II. MOTIONS TO DISMISS

■ The defendants received service in this cause through the Secretary of State pursuant to the Texas long arm statute, Tex.Rev.Civ.Stat.Ann. art. 2031b (1964). Therefore, to prevail over the motions to dismiss, plaintiff has the dual burden of proving that the defendants are amenable to process under article 2031b, and that the assertion of jurisdiction over the defendants under article 2031b complies with due process. *Jetco Electronic Industries v. Gardiner*, 473 F.2d 1228 (5th Cir. 1973).

### A. ART. 2031b

Section four of article 2031b provides:

Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State.

Plaintiff contends that defendants are "doing business" in Texas under both the contract clause and the tort clause of article 2031b.

Because the court finds that defendants are amenable to process under plaintiff's latter theory, it is unnecessary to consider the former.

■ In the court's view, plaintiff has established a prima facie case of libel under Tex.Rev.Civ.Stat.Ann. art. 5430, as defendants were responsible for the publication of statements which could clearly injure plaintiff's reputation and financial position. Defendants contend that the fact that the publication occurred outside of Texas removes the alleged tort from the purview of article 2031b, but article 2031b has been

construed to extend to injury occurring within Texas as a result of wrongful act committed without the state. *Jetco, supra,* at 1232, note 5. Defendants' reliance on *Talcott v. Midnight Publishing Corp.,* 427 F.2d 1277 (5th Cir. 1970) for the proposition that they are not amenable to process under article 2031b because the article was brought into the state by persons not under defendants' control is likewise unsound, because *Talcott* is solely concerned with a portion of Florida's long-arm statute. In *Jetco* libelous statements were published and circulated by a third party not under the foreign defendants' control, and the Fifth Circuit held that the defendant was responsible for the acts of the third party because it was foreseeable to the foreign defendant that the third party would publish and distribute the statements. It cannot be seriously questioned that defendants Owens and Cloherty and the Syndicate could foresee the circulation of the article in Texas by publication within Texas and that all defendants could foresee such circulation by publication without Texas and shipment into the state, as occurred with the article in question.

■ Defendants contend that to make them amenable to process under article 2031b plaintiff's cause of action must have arisen from their activities in Texas. Plaintiff's cause of action clearly "arises out of" the defendants' activity on which amenability under article 2031b is based, i. e. the commission of a tort in part in Texas as that language has been construed in *Jetco,* thus satisfying the restrictive reading of article 2031b suggested by the defendants.[1] Finally the court is not persuaded that the fact that the number of publications circulated in Texas was small should alter the defendants' amenability to service under article 2031b. The extent of such circulation may be relevant to the constitutional aspects of defendants' motions and for pur-

poses of the extent of plaintiff's damages, but it is enough for purposes of article 2031b that the alleged tort occurred in part in Texas by the foreseeable circulation of some newspapers in this state.

## B. DUE PROCESS

Although all defendants are amenable to service under article 2031b, they are not on equal footing with respect to due process considerations. Applying the tests of whether each defendant has sufficient contact with Texas resulting from an affirmative and voluntary act or acts and whether it would be fair and reasonable to require each defendant to defend this action in Texas, *Product Promotions Inc. v. Cousteau,* 495 F.2d 483 (5th Cir. 1974), it appears that the Syndicate on one hand, and the Post and Star on the other hand, lie at opposite ends of the due process continuum, with defendants Owens and Cloherty falling somewhere in between these extremes.

■ The court finds that it cannot exercise jurisdiction over the persons of the Post and Star consistent with due process. Although these defendants' sending of newspapers into Texas to subscribers or newsstands constitutes a contact with the state resulting from an affirmative and voluntary act, the court finds it would not be fair and reasonable to require them to defend this action in Texas. First amendment considerations enter into this second due process inquiry, *Edwards v. Associated Press,* 512 F.2d 258 at 267 (5th Cir. 1975), and dictate this result.

Given the lack of any sales solicitation, advertising revenue, agents, offices, or other contacts of these defendants with Texas beyond the sending of a small percentage of their total circulation into the state,[2] the court is compelled to grant the motions of the Post and Star to dismiss under *Buckley*

---

1. This court has recently held that article 2031b does not require that a plaintiff's cause of action arise directly from those activities on which a defendant's amenability to service under article 2031b is based. *Navarro v. Sedco, Inc.,* 449 F.Supp. 1355 (S.D.Tex.1978).

2. The defendants' percentage of total circulation in Texas at the time of the alleged libel amounted to .027% daily and .171% Sunday for the Post and .011% daily and .010% Sunday for the Sentinel.

v. New York Times Co., 338 F.2d 470 (5th Cir. 1964), and New York Times Co. v. Conner, 365 F.2d 567 (5th Cir. 1966). The manner in which and extent to which first amendment considerations enter into a personal jurisdiction inquiry were aptly stated in Rebozo v. Washington Post Company, 515 F.2d 1208 (5th Cir. 1975).

> [F]irst amendment considerations do not preclude the assertion of jurisdiction over a national magazine when the purposeful nature of such a publication's activities in the forum, and the concomitantly greater pecuniary benefits accruing to the magazine by virtue of its distribution, tend to ameliorate the fear that the prospect of litigation might limit the circulation of information to which the public is entitled.

Id., at 1215.

The Post and Star are not national publications and the unsolicited shipment of such a small percentage and amount of their circulation into Texas does not rise to such a level as to outweigh the first amendment considerations.

The court is not persuaded to a different result by Anselmi v. Denver Post, Inc., 552 F.2d 316 (10th Cir. 1977). Although the number of the defendant's newspapers sent into the forum in that case was extremely small, several other considerations not present in the instant case supported the assertion of personal jurisdiction over the foreign defendant including the presence of defendant's reporters for the purpose of gathering news for the story in question, the sale of syndicated features to newspaper subscribers in the forum, visits to the forum by the defendant's agent twice a year, and solicitations sent into the forum. Therefore, the court will grant the Post and Star's motions to dismiss.

■ The court finds that it has jurisdiction over the person of the Syndicate consistent with due process. The Syndicate contends that the plaintiff's cause of action does not arise from and is not connected with any of its activities in Texas and that therefore due process will not permit the assertion of jurisdiction over its person, citing Walker v. Newgent, 442 F.Supp. 38, 39 (S.D.Tex.1977). The court rejects this contention for several reasons. First, the Syndicate's reliance on Walker v. Newgent, supra, is misplaced in that the language it relies on in that case was taken from an opinion of the Supreme Court of Washington[3] whose interpretation of the due process clause is not binding on this court. Second, in this case the acts of the Syndicate which support the service of process on it under article 2031b (i. e. the syndication of the article in question which was foreseeably circulated in Texas) did give rise to plaintiff's cause of action. Not unlike a manufacturer who injects its product or component part into the stream of commerce under circumstances in which shipment into the forum state is reasonably foreseeable, the Syndicate sold the article in question to publishers under circumstances in which shipment into the forum state was reasonably foreseeable. Subject to first amendment considerations, personal jurisdiction over the Syndicate may be based on this single tortious act for a cause of action arising from the circulation of the article in the forum. See Rebozo, supra, at 1214.

The court also rejects the Syndicate's contention in that it is constitutionally permissible to assert personal jurisdiction over it in this case on the basis of its other activities in this forum. In Jetco, the Fifth Circuit stated that personal jurisdiction over a foreign defendant in a suit arising out of the commission of a tortious act in the state may be maintained . . . "if the defendant's other activities within the forum, even though wholly unrelated to the suit, satisfy the minimum contacts requirement. Jetco, supra, at 1234. The court in Jetco went on to find that the defendant's

---

**3.** The citation to the language on which the Syndicate relies in Walker as originally entered and published is incorrect. A correction was entered by Order of this court on June 14, 1978, in that cause to show the proper citation, Tyee

Construction Co. v. Dulien Steel Products, Inc., 62 Wash.2d 106, 381 P.2d 245, 251 (1963), cited in Bland v. Kentucky Fried Chicken Corp., 338 F.Supp. 871, 874 (S.D.Tex.1971).

unrelated contacts with the forum were constitutionally sufficient in and of themselves to sustain the exercise of personal jurisdiction over the defendant. See also, *Rebozo, supra* at 1215, note 20. The court finds that in addition to the tortious act in question, the Syndicate's other contacts with Texas, particularly the Syndicate's agreements by which it was forwarding Owens and Cloherty articles to three Texas newspapers at the time of the alleged libel, are sufficient to sustain jurisdiction over its person. In addition the extent of the Syndicate's activities are such as to "ameliorate the fear that the prospect of litigation might limit the circulation of information to which the public is entitled," *Rebozo, supra,* at 1215, and therefore it is fair and reasonable to require the Syndicate to defend this action in Texas notwithstanding first amendment considerations.

■ Finally the court finds that the assertion of jurisdiction over Owens and Cloherty complies with due process. What has been said above with respect to the Syndicate applies to these defendants: that they committed a tortious act in Texas which gave rise to the plaintiff's cause of action, that the circulation of the article in Texas was reasonably foreseeable, and that absent first amendment considerations jurisdiction may be based on this tortious act. Further, the court believes that Owens and Cloherty's purposeful act of allowing the Syndicate to sell publication rights to their articles anywhere in the United States and Canada and the resulting sales to Texas newspapers from which Owens and Cloherty derived revenue constitute additional contacts with Texas of a quality and nature which make it fair and reasonable to require them to defend this action in Texas and which overcome the relevant first amendment considerations. Although the court is not and was not made aware of any cases dealing with the amenability to suit of foreign syndicated columnists, the Fifth Circuit's analysis in *Curtis Publishing Co. v. Golino,* 383 F.2d 586 (5th Cir. 1967), is instructive.

The existence of a newspaper, no matter how popular, depends primarily upon circulation in the vicinity of its publication. Circulation in other areas may well be welcomed, but it is not critical to the newspaper's continued existence. Circulation beyond the vicinity of publication can be characterized as "passive" in that it is a product of the publication's excellence rather than of a business effort of active solicitation in all areas of the nation. Such is not the case with a publisher of a national magazine. The primary function of such a business is to sell as many magazines as possible in every state of the union, and to that end the corporation actively directs its business. The publication itself, unlike a newspaper, is not prepared primarily for local consumption, but rather for a nationwide audience.

Id. at 590 (Footnotes omitted).

Owens and Cloherty's contacts with Texas arose under a syndication agreement contemplating a purpose and motivation on the part of these writers to obtain the widest circulation possible for their articles. Therefore, the court believes that Owens and Cloherty are in a position similar to that of national publishers and that ". . . it would not comport with notions of fair play and substantial justice to allow a business enterprise, whose overriding business purpose is maximum exploitation of the national market, to be free from suit as a matter of law in all states but that of publication simply because physical contacts with the other states had been reduced to a minimum." Id., at 591. Furthermore, the court believes that the pecuniary benefits to be derived from national syndication greatly lessen any chilling effect caused by the prospect of litigation. Finally, the court notes the interest of the state of Texas in providing a forum for one of its residents to maintain an action for injury to his reputation, the fact that the article in question addressed itself to events alleged to have been undertaken by plaintiff in Houston, and the fact that the witnesses familiar with plaintiff's reputation reside in Texas as other factors tending to

make it fair and reasonable to require Owens and Cloherty to defend this action in Texas.

Therefore, it is ORDERED:

(1) that the motions to dismiss for want of personal jurisdiction of Long Island Daily Press Publishing Company, Inc., Washington Star Communications, Inc., The Denver Post, and The Sentinel Star Company be, and the same are hereby, GRANTED: and

(2) that the motions to dismiss for want of personal jurisdiction of Robert Owens, Jack Cloherty, and the Times Mirror Company be, and the same are hereby, DENIED.