Richard M. PATCH, Appellant,

v.

PLAYBOY ENTERPRISES, INC. and Frank Browning, Appellees.

No. 80–1241.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1980.

Decided July 7, 1981.

Rehearing and Rehearing En Banc Denied Aug. 11, 1981.

R. Dickey Hamilton (argued), Sharon Baldwin, Shadur, Krupp & Miller, Chicago, Ill., John T. Martin, Sam L. Colville, Shook, Hardy & Bacon, Kansas City, Mo., for appellees.

Edward P. McSweeney (argued), John D. Anderson, for appellant.

Before LAY, Chief Judge, ROSS and McMILLIAN, Circuit Judges.

PER CURIAM.

Richard Patch allegedly was libeled by an article in the February 1976 issue of *Playboy*. Approximately twenty-three months after its first publication, on December 30, 1977, Patch brought this action in Missouri state court against Playboy Enterprises, Inc., and the author of the article [1] for libel. After removal to the United States District Court for the Western District of Missouri, the case was dismissed as barred by the Illinois one-year statute of limitations for libel actions.[2] The district court deter-mined that the Missouri borrowing statute [3] required the application of the Illinois one-year limit because the cause of action "originated" in Illinois, where the February 1976 issue of *Playboy* was first published. On appeal, Patch argues that Missouri's two-year statute of limitations on libel applies to his claim.[4]

The issue in this case is where Patch's cause of action for libel "originated" within the meaning of the Missouri borrowing statute. Patch argues that his claim originated in Missouri because he lives there. Playboy argues that the claim originated in Illinois because Playboy (1) has its principal place of business in Chicago, (2) edited, assembled, and printed the February 1976 issue there, and (3) distributed the article to its readers from Chicago.

■ The Missouri courts have not determined where a libel action accrues [5] when a nonresident publisher circulates allegedly defamatory statements about a Missouri resident in a nationwide publication. In tort cases, Missouri courts have borrowed the statute of limitations of another state when the last act necessary for the cause of action or the injury occurred outside Missouri.[6] A majority of states are said to

---

1. The cause of action against the author, Frank Browning, was properly dismissed by the district court for improper service of process.

2. Ill.Rev.Stat. ch. 83, § 14 provides:
 Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued.

3. Mo.Rev.Stat. § 516.190 provides:
 Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state.

4. Mo.Rev.Stat. § 516.140 provides in pertinent part:
 Within two years: An action for libel.... shall be brought within two years after the cause accrued.

5. "Originated" has been defined to mean "accrued."
 *Schnabel v. Taft Broadcasting Co.*, 525 S.W.2d 819, 826 (Mo.App.1975).

6. *Burns v. Union P. R.R.*, 564 F.2d 20 (8th Cir. 1977); *McIndoo v. Burnett*, 494 F.2d 1311 (8th Cir. 1974); *Sterling Drug, Inc. v. Cornish*, 370 F.2d 82 (8th Cir. 1966); *Young v. Hicks*, 250 F.2d 80 (8th Cir. 1957); *Burgert v. Union P. R.R.*, 240 F.2d 207 (8th Cir. 1957); *Jordan v. Chicago, R. I. & P. R.R.*, 293 F.Supp. 29 (W.D. Mo.1968); *Trzecki v. Gruenewald*, 532 S.W.2d 209 (Mo.1976); *Richardson v. Watkins Bros. Memorial Chapels, Inc.*, 527 S.W.2d 19 (Mo. App.1975); *Schnabel v. Taft Broadcasting Co.*, 525 S.W.2d 819 (Mo.App.1975); *Garrett v. American Family Mut. Ins. Co.*, 520 S.W.2d 102 (Mo.App.1975); *Gates v. Trans World Airlines*, 493 S.W.2d 668 (Mo.App.1973); *Lindsey v. Colgate-Palmolive Co.*, 491 S.W.2d 269 (Mo.1973); *Bowling v. S. S. Kresge Co.*, 431 S.W.2d 191 (Mo.1968); *Girth v. Beaty Grocery Co.*, 407 S.W.2d 881 (Mo.1966); *Devine v. Rook*, 314 S.W.2d 932 (Mo.App.1958); *Jenkins v. Thompson*, 251 S.W.2d 325 (Mo.1952); *McLendon v. Kissick*, 363 Mo. 264, 250 S.W.2d 489 (1952); *Christner v. Chicago, R. I. & P. R.R.*, 228 Mo. App. 220, 64 S.W.2d 752 (1933); *Brown v. Grinstead*, 212 Mo.App. 533, 252 S.W. 973 (1923).

follow this place of injury rule. Estes, *Borrowing Statutes of Limitations and the Conflict of Laws*, 15 U.Fla.L.Rev. 33, 47 (1962); Vernon, *Statutes of Limitations in the Conflict of Laws: Borrowing Statutes*, 32 Rocky Mt. L.Rev. 287, 302 (1960). This rule works well for injuries caused by a single act or for injuries occurring at a single location, but does not determine where a libel action originates because the injury occurs, potentially, in many places at the same time. The place of injury rule does not answer whether the place of first injury, most injury, or any injury governs, and, for that reason, does not tell us where a cause of action for libel originates.

 The purpose of a borrowing statute is primarily to prevent a plaintiff from forum shopping for a statute of limitations. The statute prevents a plaintiff from gaining more time to bring an action merely by suing in a forum other than where the cause of action accrued. The anti-forum shopping policy of borrowing statutes leads to the conclusion that Patch's claim originated in Illinois, when considered in the context of a nonresident plaintiff suing a nonresident publisher in Missouri for libel.

For example, if an Illinois resident sued Playboy for libel in Missouri, it would be necessary to apply the Illinois one-year statute of limitations to avoid the forum shopping consequences which Missouri's borrowing statute was designed to eliminate. Patch, of course, is a Missouri resident, but residents and nonresidents are treated the same under the Missouri borrowing statute. *Trzecki v. Gruenewald*, 532 S.W.2d 209, 212 (Mo.1976). Thus, to give effect to the anti-forum shopping principles of the statute, we hold that Patch's claim originated in Illinois.

Although the words "origin" and "originate" connote inception, beginning, and ultimate source, Patch argues that a cause of action can "originate" in more than one place. The distribution of libelous material within a state has often been held to constitute commission of a tort within the state for purposes of service of process under state long-arm statutes.[7] Also, the state of first publication has been found not to determine "where the claim arose" for federal venue purposes in a libel case involving publishers and plaintiffs from different states.[8] The multiple-origins theory would

7. The following cases have held that the tort of libel occurred or was committed in a state other than the state where first published for purposes of a state long-arm statute. *Anselmi v. Denver Post, Inc.*, 552 F.2d 316 (10th Cir.) *cert. denied*, 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977) (*Los Angeles Times* caused tortious injury by an act or omission in Wyoming, even though the paper was first published outside the state, *id.* at 318–21); *Rebozo v. Washington Post Co.*, 515 F.2d 1208 (5th Cir. 1975) (the injury to Florida resident's reputation caused by the *Washington Post's* sending a libel into Florida could be considered a tort arising from conduct in Florida, *id.* at 1212); *Edwards v. Associated Press*, 512 F.2d 258 (5th Cir. 1975) (Associated Press committed a tort in whole or in part in Mississippi, because distribution of the report occurred there, even though AP alleged the report was first published in New Orleans, *id.* at 263–64); *Buckley v. New York Post Corp.*, 373 F.2d 175 (2d Cir. 1967) (Connecticut long-arm statute authorizing service of process for tortious injury committed within the state permitted exercise of jurisdiction over nonresident publisher who had distributed allegedly libelous material in Connecticut, *id.* at 180); *Curtis Publishing Co. v. Cassel*, 302 F.2d 132 (10th Cir. 1962) (com-

munication of the allegedly libelous material to persons in Kansas meant the tort arose in Kansas, even though the statements were first published elsewhere, *id.* at 138–39); *McBride v. Owens*, 454 F.Supp. 731 (S.D.Tex.1978) (alleged tort occurred in part in Texas by the foreseeable circulation of some newspapers in that state, *id.* at 735); *Process Church of the Final Judgment v. Sanders*, 338 F.Supp. 1396 (N.D.Ill.1972) (a tort was committed in Illinois by distributing in Illinois a book first published elsewhere); *Middlebrooks v. Curtis Publishing Co.*, 264 F.Supp. 373 (D.S.C.1967) (cause of action arose in South Carolina because of communication to persons in that state of libelous material first published elsewhere); and *Buckley v. Beaumont Enterprise*, 232 F.Supp. 986 (E.D.La.1964) (a cause of action for libel "results from" distribution of a Texas newspaper in Louisiana).

8. *See e. g.*, *Akbar v. New York Magazine Co.*, 490 F.Supp. 60 (D.D.C.1980) (a libel claim arose in the District of Columbia, where plaintiffs resided and worked, under 28 U.S.C. § 1391(a), even though the article was written, edited, and prepared for publication in New York, *id.* at 67).

hold that a cause of action "originates" or "accrues" where a tort is committed; in other words, libel actions would originate practically everywhere for nationwide publications. In effect, this rule would exempt libel actions from borrowing statutes. The advantage of the multiple origins theory would be that residents of Missouri would have two years to bring libel actions for injury to his or her reputation in the community regardless whether the publisher was a resident or not. The disadvantage of such a result, however, and our reason for rejecting the theory, is that it ignores the forum shopping consequences which borrowing statutes were designed to eliminate.

■ Patch's suggestion that we adopt a most significant contacts test for determining where his cause of action originated is without support in Missouri law. *Trzecki v. Gruenewald*, 532 S.W.2d 209, 211–12 (Mo. 1976).

Since the parties focused on some Missouri venue cases and the single publication rule, we refer briefly to these matters to indicate why they were not the basis for our decision.

The Missouri Supreme Court has held that a cause of action for libel accrues in the county where first published for purposes of venue among Missouri counties. *State ex rel. Allen v. Barker*, 581 S.W.2d 818, 826 (Mo.1979); *Litzinger v. Pulitzer Publishing Co.*, 356 S.W.2d 81 (Mo.1962), *cert. denied*, 374 U.S. 831, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963). Playboy argues that, by analogy, a cause of action for libel originates in the state where first published for purposes of borrowing a statute of limitations. Venue statutes and borrowing statutes, however, serve different policies. The purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–84, 99 S.Ct. 2710, 2716, 61 L.Ed.2d 464 (1979). Fairness to and convenience of the *resident* publisher justify interpreting the words "where the claim accrued" so as to limit the plaintiff's ability to select the venue that best suits his

or her convenience. The Missouri legislature, however, established venue rules for nonresident publishers which are different from those for resident publishers. Nonresident publishers apparently can be required to defend a libel action in any county in the state, including that of the plaintiff's residence. Mo.Rev.Stat. § 508.010(4). This difference in Missouri's venue rules for resident and nonresident publishers diminishes the relevance of the Missouri venue cases involving resident publishers for this appeal, which involves a question of borrowing another state's statute of limitations in a libel action against a nonresident publisher. *See generally Edwards v. Associated Press*, 512 F.2d 258, 263–64 & nn. 14 & 15 (5th Cir. 1975).

■ Playboy also argues that the single publication rule dictates that Patch's claim originated in Illinois because the February 1976 issue was allegedly first published in Illinois. The single publication rule requires a plaintiff to recover all his or her damages arising from a libel published in any one edition or issue of a magazine in one action. Restatement (Second) of Torts § 577A (1977). In many jurisdictions, the rule also identifies when a cause of action accrues for purposes of tolling the statute of limitations. *Hartmann v. Time, Inc.*, 166 F.2d 127, 135 (3d Cir.), *cert. denied*, 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763 (1948). *Cf. Domniak v. National Enquirer*, 439 Pa. 222, 266 A.2d 626 (1970). As previously indicated, the single publication rule has generally not been used to determine where the tort of libel occurred for purposes of service of process or where the claim for libel arose in a federal venue case. The reasons for limiting the single publication rule to its purposes of permitting only one action and determining *when* a cause accrued are well stated by Judge Friendly in *Buckley v. New York Post Corp.*, 373 F.2d 175, 179–80 (2d Cir. 1967), and need not be repeated here.

We affirm the judgment of the district court on the grounds that Patch's cause of action originated in Illinois and is barred by the Missouri borrowing statute. We reach this conclusion not by analogies to state or

federal venue cases, service of process cases, or the single publication rule, because these legal principles serve purposes different from the purpose of the Missouri borrowing statute. Rather, it is only by holding that Patch's claim originated in Illinois that the anti-forum shopping purpose of the Missouri borrowing statute can be consistently applied to residents and nonresidents.

Judgment affirmed.

McMILLIAN, Circuit Judge, concurring.

I concur with the result reached by the majority and I feel compelled to state separately my reasons for so concurring. I part company with the other members of this panel concerning the use of the Missouri venue cases. While I concede these venue cases are not dispositive, the analogy between Missouri's venue and borrowing statutes is helpful in determining how Missouri courts would decide where appellant's cause of action for libel accrued.

*Choice of Law—Which Statute of Limitations Governs?*

The district court correctly phrased the second issue presented as "where did Mr. Patch's libel action against these defendants accrue?" All parties agree that the Missouri state courts have not specifically decided the question where a cause of action for libel accrues for statute of limitations purposes. Under the doctrine of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), in diversity jurisdiction cases the federal courts are required to follow the conflicts of law rules of the highest court of the state in which they sit. Furthermore, decisions made by state courts are controlling as to the meaning and extent of their statutory requirements. *Id.* at 104, 65 S.Ct. at 1467; *Hicklin v. Coney,* 290 U.S. 169, 171, 54 S.Ct. 142, 143, 78 L.Ed. 247 (1933). *See also Meredith v. Winter Haven,* 320 U.S. 228, 234–36, 64 S.Ct. 7, 10, 88 L.Ed. 9 (1943); *Challoner v. Day & Zimmermann, Inc.,* 546 F.2d 26 (5th Cir. 1977) (per curiam); *Korzetz v. Amsted Industries, Inc.,* 472 F.Supp. 136 (E.D.Mich.1979).

Thus, a federal court may not ignore the applicable statutory provisions of state law even though the federal court may disagree with the state court's construction and the state court's construction is in conflict with decisions of other states having the same statutory provisions. *Graham v. White-Phillips Co.,* 296 U.S. 27, 56 S.Ct. 21, 80 L.Ed. 20 (1935); *Stueve v. American Honda Motors Co.,* 448 F.Supp. 167 (D.Kan.1978).

For reversal appellant argues that the Missouri statute of limitations governs because the situs of the injury was the domicile of appellant, that is, according to appellant, the place where the cause of action accrued or originated. It is appellant's contention that to hold otherwise would be to deny Missouri citizens the benefits of Missouri laws.

Appellees argue that the choice of law question is governed by whether the Missouri courts would adopt the single publication rule in this context. *See Hartmann v. Time, Inc.,* 166 F.2d 127, 132 (3d Cir. 1947), *cert. denied,* 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763 (1948). According to appellees, if the single publication rule is applicable, then the cause of action necessarily accrued in Illinois, the state of publication.

At this juncture it is necessary to point out that my analysis in this case differs from that suggested by either appellant or appellees. My concurrence examines the operative effect of the Missouri borrowing statute and the construction given to it by Missouri appellate courts in libel actions. I do not apply the approach suggested by the Restatement, although it has been adopted by Missouri in addressing choice of law problems in other contexts. *See* Restatement (Second) of Conflicts of Laws §§ 142, 143 (1971). As the majority correctly points out, borrowing legislation has been seen as a permissible method legislators may use to instruct the courts in their dealings with limitation problems dealing with conflicts of law. Borrowing statutes, when applicable, largely preempt the court's examination into alternative conflicts of law theories because the statute requires a mechani-

cal and uniform result intended to discourage forum shopping.[1]

The Missouri borrowing statute provides that "[W]henever a cause of action has been fully barred by the laws of the state, territory, or country in which it was originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state." Mo.Rev.Stat. § 516.190 (1978). The general rule is that, if plaintiff's action is barred by the statute of the state where the cause of action arose, it is also barred in Missouri. *Farthing v. Sams*, 296 Mo. 442, 247 S.W. 111 (1922).[2] *See also Jenkins v. Thompson*, 251 S.W.2d 325 (Mo. 1952).

Where the issue has been the construction of its statutory venue provision, Mo.Rev. Stat. § 508.040 (1978),[3] the Supreme Court of Missouri has consistently held that "plaintiff's cause of action accrues at the principal place of publication."[4] *Litzinger v. Pulitzer Publishing Co.*, 356 S.W.2d 81, 84 (Mo.1962), *cert. denied*, 374 U.S. 831, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963); *McClung v. Pulitzer Publishing Co.*, 279 Mo. 370, 214 S.W. 193, 196–99 (1919) (banc); *Houston v. Pulitzer Publishing Co.*, 249 Mo. 332, 155 S.W. 1068, 1070 (1913). *See also Jaffe v. Dolan*, 264 F.Supp. 845, 848 (E.D.N. Y.1967), *citing Buckley v. New York Post Corp.*, 373 F.2d 175 (2d Cir. 1967); *Banks v. King Features Syndicate*, 30 F.Supp. 352, 354 (S.D.N.Y.1939); Annot., 20 A.L.R.3d 942 (1968) (for diversity cases regarding venue).

In *Litzinger v. Pulitzer Publishing Co., supra*, 356 S.W.2d at 84–86, the plaintiff initiated a cause of action for libel based upon a newspaper article published in the City of St. Louis. The plaintiff argued that his cause of action accrued in St. Louis County, however, because the editorial in question had attacked plaintiff in his capacity as sheriff in St. Louis County and thus the only harm suffered took place in the county. The Missouri Supreme Court rejected plaintiff's argument, holding that an action for libel accrues at the place of first publication, not where appellant suffered the most harm as a result of the publication.

By analogy to the venue cases, I believe appellant's action for libel against *Playboy* "accrued," within the meaning and application of the Missouri borrowing statute, in Chicago, Illinois, the magazine's principal place of publication.

I am fully aware that borrowing statutes and venue statutes have different purposes. Borrowing statutes are primarily designed to prevent a plaintiff from forum shopping to gain more time to initiate his or her cause of action. On the other hand, venue statutes are designed to protect the defendant against the risk that the plaintiff will select an unfair or inconvenient forum for trial.

Were it not for the fact that Missouri courts have never determined where a libel action accrues when a nonresident publisher circulates nationwide allegedly defamatory statements about a Missouri resident, I

---

1. For the most comprehensive discussion of borrowing statutes, see Vernon, *Statutes of Limitation in the Conflict of Laws: Borrowing Statutes*, 32 Rocky Mtn.L.Rev. 287 (1960); *see also* R. Leflar, Conflict of Laws § 66 (1959); 3 S. Rabel, the Conflict of Laws: A Comparative Study 475–524 (1950).

2. Statute of limitations may be raised as a defense in libel actions by motion to dismiss where the complaint shows on its face that the action has not been instituted within the limitations period and it is apparent that there is no genuine factual controversy surrounding the question of the availability of the defense. *Tanner v. Presidents-First Lady Spa, Inc.*, 345 F.Supp. 950, 954 (E.D.Mo.1972).

3. 508.040. Suits against corporations, where commenced.—Suits against corporations shall be commenced either in the county where the cause of action accrued, or in case the corporation defendant is a railroad company owning, controlling or operating a railroad running into or through two or more counties in this state, then in either of such counties, or in any county where such corporations shall have or usually keep an office or agent for the transaction of their usual and customary business.

4. For purposes of this case, I need not enter the debate surrounding what events constitute a "publication." It is sufficient to note that the first printing, the first communication to a third party, and the first sale were made in Chicago.

would agree with the majority that the venue cases serve no useful purpose. But because this issue has never been dealt with squarely, I find it more persuasive to rely *in part* upon a consistent line of Missouri venue cases that have held that "plaintiff's cause of action accrues at the principal place of publication," rather than to rely solely upon a bald declaration concerning the anti-forum shopping policy that underlies all borrowing statutes.